[No. 1186.]

WILLIAM THOMPSON, RESPONDENT, *v.* RENO SAVINGS BANK ET AL., M. C. LAKE, APPELLANT.

CORPORATION OF BANK—UNPAID SUBSCRIPTIONS—TRUST FUND.—The unpaid subscriptions to the capital stock of a bank corporation is a trust fund for the benefit of the general creditors of the corporation.

IDEM—CERTIFICATE OF INCORPORATION—WHEN STOCKHOLDERS CANNOT CONTRADICT THE CERTIFICATE—ESTOPPEL.—The certificate of incorporation is made for the benefit of the public, not for the corporation or its stockholders. Those who participated in the incorporation, and by a certificate, made in pursuance of the statute, announced the amount of its capital stock, cannot, as against the creditors of the corporation, contradict their own certificate.

IDEM—SECRET ARRANGEMENTS OF STOCKHOLDERS VOID AGAINST CREDITORS. —Any secret arrangement between the corporation and its stockholders by which the responsibility of the stockholders is made less than it appears to be under the articles of incorporation, is void as against creditors.

IDEM—SUBSCRIPTION TO STOCK—WHEN IT CANNOT BE DENIED.—A party who signs the certificate of incorporation as that of a subscriber to shares of its stock, and permits his name to remain in the certificate, cannot afterwards, as against creditors, deny such subscription.

---

1  42 Am. Rep. 695.                    2  13 Am. Dec. 37.

IDEM—STOCKHOLDER ALSO CREDITOR—UNPAID SUBSCRIPTION—SET OFF NOT ALLOWED.—A stockholder who is a creditor of the corporation cannot offset his unpaid subscription as against the general indebtedness of the corporation.

IDEM—COLLATERAL SECURITIES HELD BY STOCKHOLDERS—RIGHT OF CREDITOR TO PARTICIPATE IN TRUST FUND.—Where the indebtedness of the corporation to a stockholder is collaterally secured: *Held,* that the stockholder must pay the amount of his unpaid subscription and surrender the collateral securities, and that he could then participate in the fund ratably with the other creditors.

IDEM—PARTIES DEFENDANT.—In a suit brought to subject the equitable assets of the corporation to the claim of the creditors, it is not necessary to make all the stockholders defendants. Any individual stockholder may be sued for the amount of his unpaid subscription, and if he is required to pay more than his proportionate share of the debts of the corporation his remedy is against the other stockholders owing unpaid subscriptions.

IDEM—PARTIES PLAINTIFF.—When there are many persons having a common interest, one or more may sue for the benefit of all, and those who come in and establish their claims share with the plaintiff in the benefits of the decree.

IDEM—NOTICE TO CREDITORS.— The creditor who commences the action in behalf of himself, and all others who may come in and establish their debts, is not required to give notice to the other creditors or to get their consent to the bringing of the suit.

APPEAL from the District Court of the Seventh Judicial District, Washoe County.

The facts are sufficiently stated in the opinion.

*Robert M. Clarke* and *Trenmor Coffin,* for Appellants:

I. This action cannot be maintained by Thompson alone without uniting the other creditors of the bank. (Barb. on Par. 431, 453; Sto. Eq. Pl., secs. 72, 76 c, 99, 126; Thomp. on Liab. of Stock., secs. 258, 349, 351, 361; *Hallett* v. *Hallett,* 2 Paige, 15; *Dias* v. *Bouchaud,* 10 Paige, 445; *United States* v. *Parrott,* McAll. 271; *Morgan* v. *N. Y. R. R. Co.,* 10 Paige, 290;[1] *Coleman* v. *White,* 14 Wis. 700;[2] *Crease* v. *Babcock,* 10 Met. 525; *Umstead* v. *Buskirk,* 17 Ohio St. 113; *Smith* v. *Huckabee,* 53 Ala. 191; *Sawyer* v. *Hoag,* 17 Wall. 620; *Bush* v. *Cartwright,* 7 Or. 329; *Faull* v. *The Alaska Mg. Co.,* 8 Saw. 420; *Patterson* v. *Lynde,* 106 U. S. 519.)

The only creditors named are Thompson, plaintiff, and Lake, the defendant, although it is pleaded and admitted that there are other creditors. Such other creditors are not made parties

---

1   40 Am. Dec. 244.          2   80 Am. Dec. 581.

by the amendment made at the trial, to the effect that the action is brought in behalf of all who are entitled to come in and seek relief. Such an amendment in no sense has the effect to make them parties or bring them before the court. (Ad. Eq. 312; *Verplank* v. *Mer. Ins. Co.*, 2 Paige, 438; *Elmendorf* v. *Delancey*, Hop. Ch. 555; *Lucas* v. *Bank of Darien*, 2 Stew. 280; *Green* v. *McKinney*, 6 J. J. Marsh. 193; *Cary* v. *Hillhouse*, 5 Ga. 251; *Huston* v. *McClarty*, 3 Litt. 274; *De Wolf* v. *Mallett*, 3 Dana, 214.)

The civil practice act of this state regulates and governs all proceedings in the courts of this state, whether at law or in equity. Generally the complaint must state the names of all the parties, both plaintiff and defendant. (Civ. Pr. Act, secs. 1, 17, 24, 29, 39; 1 Comp. Laws, 1064, 1080, 1092, 1102.)

II. This action cannot be maintained against Lake alone, he being one of several stockholders. All the stockholders should be joined as defendants in one suit, and the proceedings should be under the statute. (Thomp. on Liab. of Stock., secs. 258, 259, 361; *Smith* v. *Huckabee*, 53 Ala. 191; *Matthews* v. *Albert*, 24 Md. 532; *Erickson* v. *Nesmith*, 46 N. H. 371; *Hadley* v. *Russell*, 40 N. H. 109; *Masters* v. *Rossie Lead M. Co.*, 2 Sandf. Ch. 301; *Thayer* v. *Union T. Co.*, 4 Gray, 75; *Man* v. *Pentz*, 3 N. Y. 415; *Pierce* v. *Milwaukee Co.*, 38 Wis. 253; *Adler* v. *Milwaukee B. Co.*, 13 Wis. 57; *Coleman* v. *White*, 14 Wis. 700;[1] *Umstead* v. *Buskirk*, 17 Ohio St. 118.)

This is not the case of a several, independent, and specific promise to pay the sum of money involved unconditionally. The promise, if any, is to pay in the manner the statute provides; that is to say, in installments, upon call of the trustees, and after due notice. (2 Comp. L., sec. 3398; *Faull* v. *The Alaska Mg. Co.*, 8 Saw. 420; *McKelvey* v. *Crockett*, 18 Nev. 238.)

If the bank refused to make the call, a court of law would compel it to be made. (Thomp. Liab. of Stock., sec. 15.)

Or in a proper case, a court of equity would make it. (*Adler* v. *Pat. Brick M. Co.*, 13 Wis. 62; *Ward* v. *Griswoldville M. Co.*, 16 Conn. 601; *Ogilvie* v. *Knox I. Co.*, 2 Black, 539; *Schaffer* v. *Lehman*, 56 Ga. 191.)

III. The proofs do not establish a subscription by Lake for any sum except seven thousand five hundred dollars, and this sum he has fully paid

The proofs show: That there was no written agreement of subscription for any sum. The by-laws of the corporation provide that all stock not paid for at the time the bank commenced business shall belong to the corporation, and may be disposed of by the trustees.

The signing of the certificate of incorporation by Lake as a trustee for the first six months does not prove Lake a subscriber for twenty-five shares of the stock, or for any number of shares. This was but the act by which the corporation was created, and did not constitute a subscription. The fact that Lake acted as a trustee and officer of the corporation did not make him a subscriber for twenty-five shares, or for any shares of the stock. To authorize Lake to act as a trustee for the first six months, it was not necessary that he should be a stockholder. (1 Comp. Laws, 3390.)

Lake's participation in the profits of the business of the bank is not evidence of his promise to pay to the bank any sum of money whatever. To be valid a subscription to the capital stock of a corporation must be in writing. (Thomp. on Liab. of Stock., sec. 108; *Pittsburg & Stubenville R. R. Co.* v. *Gazzan*, 32 Pa. St. 340; *Vreeland* v. *Stone*, 29 N. J. Eq. 191; *Thames Tunnel Co.* v. *Sheldon*, 6 Barn. & Cres. 161.)

IV. Whatever may be said as to the effect of the facts discussed by way of estoppel, they have not the slightest force or application here. An estoppel proceeds upon the theory that no agreement was made, but that Lake did or said something, which to permit him to deny would operate as a fraud upon Thompson. (*Davis* v. *Davis*, 26 Cal. 23;[1] *Bowman* v. *Cudworth*, 31 Cal. 148; *Moyes* v. *Griffith*, 35 Cal. 558; *Martin* v. *Zellerbach*, 38 Cal. 300.[2])

V. The demand of Thompson is a debt of the bank. Lake is not indebted to the bank in the ordinary sense, nor upon any specific agreement, nor for any sum certain. His liability in the case stated is for assessments and not for money promised or due. The remedy of the corporation is to levy its assessments, make its call, and give notice thereof, and in default of payment to sell the stock in the manner provided by statute. (2 Comp. L. 3398; *McKelvey* v. *Crockett*, 18 Nev. 238.)

Not being indebted to the corporation upon any contract to pay, his liability, if any, is that of a stockholder merely, but this liability is to pay assessments when levied, or suffer the loss of

---

1  85 Am. Dec. 157.          2  99 Am. Dec. 365.

his stock.    (2 Comp. L. 3398; *Andover Turnpike Co.* v. *Gould,* 6 Mass. 40; 4 Am. Dec. 80; *New Bedford Toll Co.* v. *Adams,* 8 Mass. 138; 5 Am. Dec. 81; *Mechanics' Foundry Co.* v. *Hall,* 121 Mass. 272; *Small* v. *Herkimer Mg. Co.,* 2 N. Y. 330; *Renselaer* v. *Barton,* 16 N. Y. 457, 460; *Ladd* v. *Cartwright,* 7 Or. 329; *Patterson* v. *Lynde,* 106 U. S. 519.)

VI. Should the court find Lake to be a subscriber as alleged in the complaint, and hold this action rightly brought, nevertheless Lake is entitled to have his judgment against the bank set off in this action against any claim that the bank may have against him for any unpaid stock subscriptions. (Thomp. Liab. of Stock., secs. 380–1; *Briggs* v. *Penniman,* 8 Cow. 390; 18 Am. Dec. 454; *Sackett's Harbor Bank* v. *Blake,* 3 Rich. Eq. (S. C.) 225, 234; *Bank of P.* v. *Ibbotson,* 24 Wend. 479; *Tallmadge* v. *Fishkill Co.,* 4 Barb. 389; *Robinson* v. *Bank of D.,* 18 Ga. 65, 109; *Jones* v. *Weltberger,* 42 Ga. 575; *Boyd* v. *Hall,* 56 Ga. 563; *Garrison* v. *Howe,* 17 N. Y. 461; *Empire City Bank,* 18 N. Y. 227; *Weeks* v. *Love,* 50 N. Y. 569; *Mathez* v. *Neidig,* 72 N. Y. 103; *Grose* v. *Hilt,* 36 Me. 22; *Larrabee* v. *Baldwin,* 35 Cal. 155.)

*Stone & Hiles* and *R. H. Lindsay,* for Respondent:

I. The court did not err in admitting the evidence, oral and documentary, offered by respondent to show appellant Lake to be a subscriber for twenty-five shares of stock, and that he had not paid the whole amount of his subscription. If any errors occurred in the various rulings of the court, they did not affect the substantial rights in the suit of appellants, and if corrected, the result of such trial would not be changed. (*Phipps* v. *Hully,* 18 Nev. 135; Comp. Laws, 3390, 3393, 3404; *Chubb* v. *Upton,* 95 U. S. 669; Thomp. on Stock., sec. 177; *Hoagland* v. *Bell,* 36 Barb. 58; *Highland Turnpike Co.* v. *McKean,* 10 Johns. 153;[1] *State* v. *Leete,* 16 Nev. 243; *Turnbull* v. *Payson,* 95 U. S. 421; *Graff* v. *Pittsburg R. R. Co.,* 31 Pa. St. 495; *Weber* v. *Fickey,* 52 Md. 500; *Wheeler* v. *Millar,* 90 N. Y. 357; *Griswold* v. *Seligman,* 72 Mo. 110.)

II. Lake was conclusively presumed to know the contents of all the books of the bank admitted in evidence, and his pretended want of notice or knowledge of their contents, and of the advertisements in the newspapers, was not sufficient to

---

[1] 6 Am. Dec. 324.

warrant their exclusion as evidence to establish his liability as a stockholder of the bank. (*First N. B.* v. *Drake*, 29 Kan. 325; *Bank* v. *Wulfekuhler*, 19 Kan. 64; *Bank* v. *Rudolf*, 5 Neb. 527; *United Society of Shakers* v. *Underwood*, 9 Bush, 621; *Martin* v. *Webb*, 110 U. S. 7; *Bank* v. *Dandridge*, 12 Wheat. 64; Morse on Banking, 115; Thomp. on Stock., sec. 177; *Highland T. Co.* v. *McKear*, 10 Johns. 154;[1] *Turnbull* v. *Payson*, 95 U. S. 421; *Weber* v. *Fickey*, 52 Md. 500; *Wheeler* v. *Millar*, 90 N. Y. 359.)

III. The court did not err in excluding the evidence offered by Lake to show a parol agreement with the other stockholders to the effect that he was to pay for his interest in the bank stock the sum of $7,500 only. Such pretended agreement set forth in his answer was, if made, a fraud on the creditors of the bank. (Thomp. on Stock., secs. 122, 123, 124, 129, 200, 201; *Robinson* v. *Pittsburg R. R. Co.*, 32 Pa. St. 334;[2] *White Mountain R. R. Co.* v. *Eastman*, 34 N. H. 124; *Mann* v. *Cooke*, 20 Conn. 178; *Graff* v. *Pittsburg R. R. Co.*, 31 Pa. St. 493; *Union M. L. Co.* v. *Friar Stone Co.*, 97 Ill. 557;[3] *Noble* v. *Callender*, 20 Ohio St. 199; *Clarke* v. *Thomas*, 34 Ohio St. 46; *Henry* v. *Vermillion R. R.*, 17 Ohio, 187; *Hawley* v. *Upton*, 102 U. S. 316; *Morgan Co.* v. *Allen*, 103 U. S. 508; *Griswold* v. *Seligman*, 72 Mo. 110; *Upton* v. *Triblecock*, 1 Otto, 45; *Sawyer* v. *Hoag*, 17 Wall. 610; *Sanger* v. *Upton*, 1 Otto, 60; *Webster* v. *Upton*, Ib. 65; *Com.* v. *Davenger*, 10 Phil. 479.)

IV. It was not necessary that appellant Lake should make a written subscription for stock of the concern, in order to make him liable to its creditors as a stockholder. The statute of frauds cannot be urged as a defense to this suit, in which it clearly appears that appellant made a part payment for the stock, received and appropriated to his own use dividends on twenty-five shares of the stock, and acted as a trustee and president of the board of trustees from the time of the opening of the bank until it closed its doors. (1 Comp. Laws, 287, 290; Comp. Laws, 3393, 3404; Brown on Stat. Fr. 341; *Artcher* v. *Zeh*, 5 Hill, 204; *Hidden* v. *Jordan*, 21 Cal. 100.)

V. This action can be maintained by plaintiff alone, or with the amendment to his complaint, in his own behalf, and in behalf of all other creditors who might elect to come in before or after the decree, and participate in the benefits of the suit. It was not necessary, in order to prosecute it to judgment, that

1  6 Am. Dec. 324.      2  72 Am. Dec. 792.      3  37 Am. Rep. 129.

the other creditors should be made formal parties, and serevd
with summons or other notice. (*Bartlett* v. *Drew*, 57 N. Y. 587;
*Hastings* v. *Drew*, 76 N. Y. 9; *Wheeler* v. *Millar*, 90 N. Y. 361;
*Marsh* v. *Burrows*, 1 Woods, 468; *Allen* v. *Montgomery R. R.*, 11
Ala. 437; *Wood* v. *Dummer*, 3 Mason, 308; *Ogilvie* v. *Knox I. Co.*,
22 How. 382; *Harmon* v. *Page*, 62 Cal. 448; Story's Eq. Pl.,
secs. 99, 119; *Norris* v. *Johnson*, 34 Md. 490; Thomp. on Stock.,
sec. 351, and cases cited; *Hatch* v. *Dana*, 101 U. S. 210; *Holmes*
v. *Sherwood*, 3 McCrary, 405; 16 Fed. Rep. 726; *Hallett* v. *Hal-
lett*, 2 Paige, 19; *Smith* v. *Swormstedt*, 16 How. 302; 1 Dan. Ch.
Pl. and Pr. 190, 238, 239, 240, 245; Pom. on Rem., secs. 389,
391, 394.)

VI.  It is not necessary that all the stockholders should be
made defendants in the suit. Their liability for the amount of
their unpaid subscriptions to the capital stock is a several and
not a joint liability, and any one or all of them may be pro-
ceeded against by a creditor or creditors to enforce such liability.
(*Hatch* v. *Dana*, 101 U. S. 210; *Ogilvie* v. *Knox I. Co.*, 22 How.
380; *Bartlett* v. *Drew*, 57 N. Y. 587; *Pierce* v. *Milwaukee C. Co.*,
38 Wis. 253; *Marsh* v. *Burrows*, 1 Woods, 468; *Wood* v. *Dummer*,
3 Mason, 308; Story's Eq. Pl., sec. 119; *Rettebone* v. *McGrew*, 6
Mich. 441; *Wheeler* v. *Millar*, 90 N. Y. 361; *Holmes* v. *Sherwood*
3 McCrary, 405.)

VII.  The remedy by calls or assessments is not the only
remedy which the creditor of the insolvent bank has to com-
pel the stockholder to pay his unpaid subscription. He has a
remedy in equity to compel such payment, and the call or
assessment was properly made by the district court for the
benefit of the creditor. The evidence contained in the record
shows a contract, either express or implied, to subscribe for that
number of shares. (*Harmon* v. *Page*, 62 Cal. 448; *Henry* v.
*Vermillion R. R.*, 17 Ohio, 189; *Haskins* v. *Harding*, 2 Dill.
106; *Hatch* v. *Dana*, 101 U. S. 205; *Instone* v. *Frankfort B. Co.*,
2 Bibb. 576;[1] *Scoville* v. *Thayer*, 105 U. S. 155; Thomp. on
Stock., sec. 15; *Ward* v. *Griswoldville M. Co.*, 16 Conn. 598;
*Mann* v. *Cooke*, 20 Conn. 178; *Holmes* v. *Sherwood*, 16 Fed.
Rep. 729; 3 McCrary, 405; *Chubb* v. *Upton*, 95 U. S. 669;
*Wheeler* v. *Millar*, 90 N. Y. 357; *Griswold* v. *Seligman*, 72
Mo. 110.)

VIII.  The court did not err in refusing to allow appellant
Lake to set off his judgment against the bank against his un-

---

1 5 Am. Dec. 638.

paid stock subscription. His unpaid subscription was a trust fund; and after the insolvency of the bank, the right of set-off did not exist as against its creditors. (*Sawyer* v. *Hoag,* 17 Wall. 610; *Scammon* v. *Kimball,* 92 U. S. 366; *Morgan Co.* v. *Allen,* 103 U. S. 508; *Scoville* v. *Thayer,* 105 U. S. 152; *Lawrence* v. *Nelson,* 21 N. Y. 166; *Empire City Bank,* 18 N. Y. 227; *Smith* v. *Huckabie,* 53 Ala. 195; *Mannville* v. *Krast,* 5 McCrary, 142; 16 Fed. Rep. 173; *Singer* v. *Given,* 61 Iowa, 93; Thomp. on Stock., secs. 381, 389.)

IX. The court properly refused to allow the set-off claimed by Lake, and to permit him under the decree to participate *pro rata* in the distribution of the fund which he was required to pay into court. (*Corbitt* v. *Woodward,* 5 Saw. 417; *Koehler* v. *Black River Co.,* 2 Black U. S. 720; *Drury* v. *Cross,* 7 Wall. 302; *Butts* v. *Wood,* 38 Barb. 188; *Curran* v. *Ark.,* 15 How. U. S. 304; *Bradley* v. *Farwell,* 1 Holmes, 437.)

By the Court, BELKNAP, C. J.:

The Reno Savings Bank is a corporation organized under the laws of this state for banking purposes. It was engaged in the business of banking from its organization, in the month of April, 1876, until the twenty-fourth day of June, 1880, when it became involved and suspended business. It was then indebted to plaintiff Thompson and many others, some of whom, for convenience, assigned their demands to him. Thompson recovered judgment against the bank. An execution issued upon the judgment was returned *nulla bona,* and thereupon Thompson brought this suit in equity against the bank and Lake, averring, among other things, the recovery of the judgment; that the bank had no assets subject to execution; that Lake was indebted to the bank in the sum of seventeen thousand five hundred dollars upon his unpaid subscription to its capital stock; and prayed that this amount be applied to the payment of the judgment. The suit was brought in the first place by Thompson for himself alone. At the commencement of the trial, the complaint was amended so that all other creditors who would contribute to the expense of the suit could come in as parties and seek relief with the plaintiff. A decree was rendered in favor of plaintiff. From the decree, and an order overruling a motion for a new trial, this appeal is taken.

The certificate of incorporation of the bank fixes its capital stock at one hundred thousand dollars, divided into one hundred shares of the par value of one thousand dollars each. The bank commenced business with the sum of thirty thousand dollars, of which defendant Lake paid seven thousand five hundred dollars. Lake claims that he is not liable, because this sum was not paid as a subscription to capital stock, but as a capital upon which the bank was to carry on its business, and avers that it was agreed among those who paid the money that it should be · in full of all liability as to them.

The capital stock of a corporation, other than a mining corporation, is the amount of money paid, or promised to be paid, for the purposes of the corporation. It is a fixed sum, not to be increased or diminished except in the mode permitted by the statute. This sum the law requires shall be stated in the certificate of incorporation, to be filed with the county clerk of the county in which the principal place of business of the corporation is situated, and a copy in the office of the secretary of state. The purpose of this requirement is obvious.

The share-holders are not, under the constitution, liable for the debts of the corporation. The capital stock, and especially the unpaid subscriptions thereto, is a trust fund for the benefit of the general creditors. When, therefore, the law requires a public declaration of the amount of the capital upon which a corporation operates, it contemplates a truthful statement in which the general public dealing with the corporation may confide. The certificate is made for the benefit of the public, not for the corporation or its stockholders. Those who participated in the incorporation of this bank, and by a certificate made in pursuance of the statute announced the amount of its capital stock, cannot, as against the creditors of the corporation, contradict their own certificate. Defendant Lake signed it, was president and one of the directors of the bank, participated in the management of its affairs during the period it was engaged in business, and received dividends upon his investment. He cannot now be heard to deny the truth of the certificate which he helped make, and to assert that the capital of the corporation was thirty thousand dollars instead of one hundred thousand dollars. Not only will equity refuse to hear the defense interposed, but the arrangement alleged to have

been made is in defiance of the statute under which the bank was incorporated.

Section 3543 of the compiled laws provides: "It shall not be lawful for the directors to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock, nor to reduce the amount of the same." Other provisions of the laws upon the subject of corporations permit an increase or diminution of capital stock. Whether the provision concerning a reduction applies to corporations of the character of defendant, it is unnecessary to inquire, since it is not pretended in this case that any reduction was made in compliance with law. The statute requires that any change in the amount of capital stock shall be made at a stockholders' meeting called for that purpose, upon notice specifying the object of the meeting and the proposed changes, which notice shall be published for eight weeks in a newspaper of the county in which the principal place of business of the corporation is located. (2 Comp. Laws, 3401, 3406–3408, 3544.)

The publicity required in this proceeding is for the purpose —in part, at least—of advising the public dealing with the corporation of the proposed change. The requirement of the statute—*first*, that the publicly recorded certificate of incorporation shall state the amount of the capital stock; and *second*, that any change in the amount thereof shall only be made after extended public notice — is in direct conflict with the secret contrivance alleged to have been made by Lake and his associates.

The decisions uniformly hold that any secret arrangement between the corporation and its stockholders, by which the responsibility of the latter is made less than it appears to be under the articles of incorporation, is void as against creditors. Thus, in *Allibone* v. *Hager*, 46 Pa. St. 48, the registered certificate of incorporation showed that a given amount of stock remained unpaid. The defendants, who had prepared the certificate, claimed that the unpaid balance represented stock subscribed for by them as agents of the corporation, to be sold by it when in need of funds. The court overruled the defense, in this language: "But, if I comprehend the ground of defense, it seems to me to be directly in conflict with the act, and in contradiction of the certificate. The act requires the stock to be subscribed for, and by persons who are to become

members of the company, and the certificate shows that all the original stock was subscribed by and for the defendants in this suit. Whatever might be the law between them and the corporation, as between them and the public the certificate is conclusive. I cannot agree, therefore, with the position that creditors have only the rights and equities of the corporation as against the stockholders. They have the rights which the statute gives; no more and no less. The certificate discloses the extent of the capital stock, and the statute renders all the subscribers to it liable for its payment when creditors call. Were undisclosed arrangements permitted to defeat or control the effect of the certificate, that safeguard would at once become a snare instead of a protection. If capital seeks for immunities, it must take them with such liabilities as are the terms upon which they are granted."

In *McHose* v. *Wheeler*, 45 Pa. St. 40, the certificate was acknowledged and recorded, certifying that one hundred thousand dollars was subscribed as the capital stock of a corporation, and that one quarter of this amount had been paid in. The certificate was untrue. Many of the persons named as subscribers had not subscribed, and no money was paid in. The court held that if a person named in the certificate as a member acted as such, or did not promptly disavow his alleged membership, upon discovering the use of his name, by showing that he was not a member, he would be deemed as ratifying the relation as to creditors; that the defendants, who were incorporators, could not set up their own faults and mistakes in their organization as a defense against creditors; and that, therefore, it was immaterial that no part of the stock had been paid in, although the statute under which the corporation was created required one quarter of the amount to be paid.

Appellant, with others, assumed control of the bank. He must be held to the consequences of this connection. Persons dealing with the bank were assured that its capital was one hundred thousand dollars. The law contemplates that this representation shall be true. Appellant entered into an arrangement by which he appeared to comply with the articles of incorporation. He must perform the obligation which he appeared to assume. If he did not expressly subscribe for stock, the law implies an agreement upon his part to pay his

proportionate share.   He received one quarter of the profits of
the concern when it was apparently prosperous, and is justly
decreed to be a subscriber to its stock to the same extent.
Having received the advantages of stockholdership, he cannot
escape its responsibilities.

Appellant is a creditor of the bank in a larger sum than the
amount of his unpaid subscription, and claims the right to set
off his liability with the bank's indebtedness.   In *Scammon* v.
*Kimball*, 92 U. S. 366, it was held upon similar facts that
set-off could not be allowed.   In deciding the case, the court
said: "Such an indebtedness (for unpaid shares) constitutes
an exception to the rule, that, when there are mutual debts,
' one may be set against the other,' as originally provided by
act of Parliament; or, perhaps, it would be more accurate to
say that the rule does not apply when it appears that the debts
are not in the same right, as well as mutual. ( *U. S.* v. *Eckford*,
6 Wall. 488.)   Courts of equity, following the law, will not
allow a set-off of a joint debt against a separate debt, or of a
separate debt against a joint debt; nor will such courts allow
a set-off of debts accruing in different rights, except under very
special circumstances, and when the proofs are clear and the
equity is very strong."   (2 Story Eq., sec. 1437.)

The debt which the appellant owes for his unpaid stock is a
trust fund which equity will distribute among all of the
creditors.   The proofs show a deficiency in the fund.   Each
must, therefore, take his dividend *pro rata*.   If the set-off were
allowed, the appellant would appropriate the entire fund.   "If
such a defense were entertained," said the supreme court of
Pennsylvania in *Macungie Sav. Bank* v. *Bastian*, 11 Rep. 785,
"the effect would be to withdraw from depositors and other
creditors of the insolvent bank a portion of the very fund
which was specially provided for the common benefit of all
alike, and apply it to the sole benefit of the defendant, who at
best has no better right thereto than other depositors.   If
every delinquent subscriber to the capital stock could thus pay
his subscription, what would become of other depositors and
creditors of the insolvent bank ?   It is not difficult to see
what a perversion it would be of the trust fund, and to what
gross injustice it would necessarily lead."

The bank's indebtedness to appellant is collaterally secured.
The district court correctly held that appellant must pay

the amount of his unpaid subscription and surrender the collateral securities. He could then participate in the fund ratably with the other creditors.

Objection is made for want of proper parties to maintain this suit. It is urged that the other stockholders should be made parties defendant, to the end that each shall contribute his proportion to the debt, and also that all of the creditors should be united as plaintiffs, so that each may receive his proportion of the fund, and the matter be finally determined in one suit. In a proceeding to wind up and finally settle all of the affairs of the bank, all of the stockholders would be necessary parties defendant. This is not such a proceeding, but one to subject the equitable assets of the bank to the claim of the creditors. If, in this proceeding, the defendant is required to pay more than his proportionate share of the debts of the bank, he may, in an action against the remaining stockholders, require them to contribute their fair share. In *Hatch* v. *Dana*, 101 U. S. 210, this question was considered. The court said: "The liability of a subscriber for the capital stock of a company is several and not joint. By his subscription each becomes a several debtor to the company; as much so as if he had given his promissory note for the amount of his subscription. At law, certainly, his subscription may be enforced against him without joinder of other subscribers; and in equity his liability does not cease to be several. A creditor's bill merely subrogates the creditor to the place of the debtor, and garnishes the debt due to the indebted corporation. It does not change the character of the debt attached or garnished. It may be that if the object of the bill is to wind up the affairs of this corporation, all the share-holders, at least so far as they can be ascertained, should be made parties, that complete justice may be done by equalizing the burdens, and in order to prevent a multiplicity of suits. But this is no such case. The most that can be said is that the presence of all the stockholders might be convenient, not that it is necessary. When the only object of a bill is to obtain payment of a judgment against a corporation out of its credits or intangible property,—that is, out of its unpaid stock, —there is not the same reason for requiring all the stockholders to be made defendants. In such a case no stockholder can be required to pay more than he owes."

In *Marsh* v. *Burroughs*, 1 Woods, 468, the non-joinder of

parties was set up in defense. The court said: "A judgment creditor, who has exhausted his legal remedy, may pursue in a court of equity any equitable interest, trust, or demand of his debtor, in whosesoever hands it may be, and if the party thus reached has a remedy over against other parties for contribution or indemnity, it will be no defense to the primary suit against him that they are not parties. If a creditor were to be stayed until all such parties could be made to contribute their proportionate shares of the liability, he might never get his money." (*Ogilvie* v. *Knox In. Co.*, 22 How. 380; *Bartlett* v. *Drew*, 57 N. Y. 587.)

The authorities are somewhat conflicting upon the question as to necessary parties plaintiff, in suits of this character. In *Marsh* v. *Burroughs, supra*, Mr. Justice Bradley says: "It has long been settled that a judgment creditor, who has exhausted his legal remedy by execution returned *nulla bona*, may alone, or with other judgment creditors, file a bill against persons holding property of the debtor, which, on account of fraud or the existence of a trust, cannot be reached by execution."

To the same effect is *Bartlett* v. *Drew*, 57 N. Y. 587. This ruling goes further than is necessary to uphold the present case. Other cases hold that all persons interested in the subject-matter of the suit must be made parties, so that complete justice may be done, and a multiplicity of suits avoided. An exception to this rule has been uniformly allowed in cases of the character of the present one, when there are many persons having a common interest. In such cases one or more may sue for the benefit of all, and those who come in and establish their claims share with the plaintiff in the benefit of the decree. The doctrine is thus stated by Chancellor Walworth in *Hallett* v. *Hallett*, 2 Paige Ch. 19: "If there are many parties standing in the same situation as to their rights or claims upon a particular fund, and when the shares of a part cannot be determined until the rights of all the others are settled or ascertained, as in the case of creditors of an insolvent estate, or residuary legatees, all the parties interested in the fund must, in general, be brought before the court, so that there may be but one account, and one decree settling the rights of all. And if it appears on the face of the complainant's bill that an account of the whole fund must be taken, and that there are other parties interested in the distribution thereof, to whom the

defendants would be bound to render a similar account, the latter may object that all who have a common interest with the complainants are not before the court. In these cases, to remedy the practical inconvenience of making a great number of parties to the suit, and compelling those to litigate who might otherwise make no claim upon the defendants, or the fund in their hands, a method has been devised of permitting the complainants to prosecute in behalf of themselves, and all others standing in the same situation who may afterwards elect to come in and claim as parties to the suit, and bear their proportion of the expenses of the litigation."

This rule of equity practice was adopted in this state by section 1077 of the compiled laws. The provision enacts, among other things, that " when the question is one of common or general interest, of many persons,   *   *   *   one or more may sue or defend for the benefit of all." (See also *McKenzie* v. *L'Amoureux*, 11 Barb. 516.)

The amendment to the complaint heretofore mentioned, by which the other creditors could come in and prosecute the suit with the plaintiff, brought the case within the exception stated. The amendment was made immediately before the trial, but the court, by its decree, allowed the remaining creditors a reasonable time—thirty days from the entry of the decree—within which to prove their claims and share with the plaintiff in the distribution of the trust fund. None came in; but no complaint in this regard has been suggested in behalf of any creditor.

The action of the district court in this particular is consonant with the equity practice. " The court will generally, at the hearing, allow a bill, which has originally been filed by one individual of a numerous class in his own right, to be amended so as to make such individual sue on behalf of himself and the rest of the class." (1 Dan. Ch. Pl. & Pr. 245.) Nor does it appear that notice to the other creditors was necessary. Thompson, in his treatise upon the liability of stockholders, says of suits brought by one creditor in behalf of himself, and all others who may come in and establish their debts: " This does not mean that the creditor who files the bill is under any obligation to look up all the widely scattered creditors of the corporation, and get their consent to the filing of the bill, or notify them to join him in it." (Section 351.)

The decree and order of the district court are affirmed.

During the pendency of this appeal, Mr. Lake, defendant herein, has died. An order has been made directing the substitution of the administrator of his estate.