JAMES H. McAVITY, appellant, *vs.* LINCOLN PULP AND PAPER COMPANY.

Penobscot.    Opinion March 28, 1890.

*Insolvency. Corporation. By-laws. Salary. Operative's priority and assignment. Unpaid stock. R. S., c. 46, § 45, c. 70.*

The law raises no implied promise to pay the president of a private corporation for his official services; and a by-law providing that the directors shall fix the compensation, will not entitle him to recover for such services until the directors take the necessary action; nor then, if they do not act before the corporation is adjudged insolvent.

An operative's assignment of his wages transfers to the assignee all the rights of priority which the assignor had. If wages earned within six months pre-

ceding the filing of the petition in insolvency amount to $50 or less, then the whole has priority; and if to more than that sum and none has been paid, then the $50 last earned and unpaid have the priority.

When, on payment of 60 per cent of its par value, as many shares of new stock as they already have of old, are duly allotted to stockholders, the unpaid 40 per cent is a part of the assets of the corporation, and "stands for the security of all creditors thereof" within the meaning of R. S., c. 46, § 45.

When the business of a corporation is to be closed up by insolvency proceedings, a creditor thereof holding such new stock thus unpaid, must pay in the balance and then take his percentage with the other creditors.

ON REPORT.

The appellant, McAvity, having made a proof of debt for $16,648.41 against the defendant corporation adjudged an insolvent upon petition of its creditors filed January 28, 1887, in Penobscot county, the assignee objected to its allowance, and a hearing was had in the court of insolvency.

From the account annexed to the proof of debt, it appeared that the appellant claimed a salary due him as president of the company for several years, under a by-law, and under which it was voted February 1, 1887, at a meeting of the directors to allow him $12,550 for his services in that capacity.

Besides interest on that sum, he claimed to be subrogated in place of several operatives of the company, whose labor performed within six months preceding the filing of the petition were priorities, and to be paid in full to an amount not exceeding fifty dollars. The company not being able to pay the operatives, he did so, at different times within that period, and took a written assignment of their accounts. They continued in the employ of the company afterwards, and either proved the accounts for their subsequent labor, or sold and assigned them to other persons by whom they were proved. The aggregate of these wages thus proved, in several instances, exceeded the limit of fifty dollars. It, therefore, became a question to whom such priorities were payable, it being conceded that the remainder of the claim, above the fifty dollars, should share in the general dividend.

The assignee claimed that there should be set off against the proof of debt the sum of $6,020, and interest since November 19, 1884, it being forty per cent on the par value of 301 shares of

the capital stock of the company allotted by it to McAvity at that date, and for which he had paid only sixty per cent, leaving forty per cent and interest thereon due.

The court of insolvency disallowed the claim for salary, sustained the set-off claimed by the assignee, and ruled that the right to priority follows the labor last performed, in preference to that performed within the six months, next preceding the commencement of proceedings, whether assigned or not.

The creditor appealed to this court by which it was reported to the full court.

*Jasper Hutchings*, for appellant.

Salary: The corporation was strictly a private corporation; it subserved no public use. It was in no sense charitable or benevolent. It existed for no purpose other than to make money for its stockholders. The case differs from most cases in the books wherein questions as to officers' salaries have arisen.

In *Sawyer* v. *Pawners' Bank*, 6 Allen, 207, the court lay stress upon the fact that the objects of the bank were partly charitable.

In *Smith* v. *Everett*, 61 N. H. 632, the defendants were directors chosen, not to continue the business, but to sell the property of the corporation and to close out its business. By their neglect of duty the corporation lost heavily, and the money sued for was received by the defendants, as such directors, with a full knowledge at the time of the insolvent condition of the corporation; and was a preference and its payment and receipt was, therefore, in fraud of the insolvent law.

*Hall* v. *Ry. Company*, 28 Vt. 401, tends to support the contention of the appellant rather than that of the defendant. In it the court allows a corporator to recover for services, in attending meetings before the organization of the corporation, as upon an implied promise by the company afterwards formed. The items of charge for services, that were disallowed by the court, were for services performed after an express vote by the directors not to pay for such services.

All the cases, and all except one, found in the books differ from the case at bar in one most important respect, viz: that in none of them, one only excepted, was there a by-law of the com-

pany making any mention of compensation to officers. Article 7 of the by-laws of this company, in force when the services charged for were performed, shows that it was the intention of the company that its president, secretary and treasurer, should be paid for their services. It is, in force and effect, a promise by the corporation itself of payment therefor.

No salary was voted to the president of this corporation earlier, and none was received by him, because the company in want of money and means, was all the time waging a life and death fight for existence; and the president, wanting to help, was, to this end, willing to give the company credit for his salary.

The court in *Missouri* v. *R. R. Co.*, 8 Kansas, 101 (1871) says that, "When the by-laws of a corporation provide the officers shall receive such compensation as the board of directors shall fix and allow, and the board has not fixed any compensation, a secretary who has rendered services is entitled to recover therefor, unless there was an understanding that he was to render the services without compensation; and when the compensation or salary of such clerk or officer is not fixed by contract or law, he may recover such sum as he may by competent evidence prove his services worth."

The court finds that McAvity's services were worth what he has charged, viz: $2500 a year. And it cannot reasonably be supposed, under all the circumstances of this case, that either party thought that McAvity was rendering the company services worth that amount gratuitously. If it is necessary for the appellant to resort to an implied promise in order to recover for his services as president, the facts in this case bring it fairly within the general rule entitling one to compensation, as laid down by the court in *Sawyer* v. *Pawners' Bank, supra*, p. 209.

Assigned claims : Claims against an insolvent debtor may be bought and sold, even after proceedings in insolvency have been begun, and the purchaser, the assignee, like the purchaser of a statute lien-claim takes all the rights including priorities that the vendor had, and he, the assignee, may prove them and in his own name. *Re Murdock*, 1 Low. 362; *Ex parte Davenport, Re Fortune*, idem, 384; *Ex parte Jewett, Re Morris*, 2 Low. 393; *In re*

*Stephen Brown*, U. S. Dist. Court (S. D. N. Y.) Blatchford, J., 3 B. R. 720 (177, folio). *Murphy* v. *Adams*, 71 Maine, 113; R. S., c. 82, § 130.  Common law liens, dependent for their validity upon possession of the property, are personal privileges and not generally assignable; but statute liens, which do not require the possession of property to support them, go with an assignment of the debt.  Jones on Liens, § 990.

Priorities: The rule set up by the judge of the insolvent court carried to its logical conclusion would seem to lead to this, that if an operative were paid for the last fifty dollars worth of work done by him, within the six months, he would lose altogether his priority for any unpaid balance due him for work, within that time, of an earlier date.  That can hardly be a sound rule of law which like this rule leads to an unsound condition.  It would be more in accord with the general principles of law to hold that the operative, having sold his claim for wages and with it, by implication, a right to a priority, provided the debtor should within six months become insolvent, could thereafter do nothing to impair the value of what he had sold, and so to hold in the case at bar, that the appellant McAvity has the first and best right to the priority.  If the court should think that the right to priorities is, as between these different claimants, like that of different owners of mortgage debts secured by one common mortgage, then the priorities would be apportioned between the claimants according to amounts.

Set-off: Corporation may sell its stock for less than its par value without liability of purchaser to pay more than the agreed price.  Sixty per cent was more than its market value.  Company could not maintain a suit against McAvity for this forty per cent.  He owes the company no debt by contract or otherwise on account of it.

Nor is there any liability to creditors for this forty per cent or any part of it.  A liability to creditors to pay for stock subscribed for, and to pay for it, at its par value, wherever it exists, is grounded upon a promise, a contract, to do so.  The promise to do so having been made, the statute takes care, so far as creditors are concerned, to see that it is kept in good faith, and provides a

remedy for a breach of the promise. But this statute obligation to creditors may be, and if it exists in the case at bar, is for a part only of the debts owed by the corporation. It is conditional and contingent and cannot be set off against appellant's proof of debt. It is now barred by lapse of time. R. S., c. 46, § 47. If it were not so barred, the statute remedy must be pursued; or at any rate, a remedy of a character that would, in this and other similar cases in its enforcement, apportion the burdens fairly and equitably upon all the solvent shareholders who are or might be debtors, for or on account of, an unpaid balance for their stock. This cannot be done by simple set-off. *Grindle* v. *Stone*, 78 Maine, 176; Mor. Corp. §§ 315, 822.

*F. H. Appleton and H. R. Chaplin*, for defendant.

Salary claim not a legal indebtedness of company at the commencement of proceedings. Vote of directors illegal and *ultra vires*. Counsel cited: *Sawyer* v. *Pawners' Bank*, 6 Allen, 207; *Smith* v. *Everett*, 61 N. H. 632; *Hall* v. *Ry. Co.*, 28 Vt. 409; *R. R.* v. *Ketchum*, 27 Conn. pp. 170, 182; Bump, B'k'cy, pp. 78, 176; Hamlin's Insol. Law, p. 21; *Upton* v. *Hansbrough*, 10 N. B. R. 369; 2 Mor. Corp. § 787; *Craig's Appeal*, 92 Pa. St. 396.

Set-off: Acceptance of stock by McAvity equivalent to a "subscription to" or "an agreement for" the shares. R. S., c. 46, § 45. Liable to the assignee for the unpaid balance. *Bullard* v. *Bell*, 1 Mason, p. 299; 2 Mor. Corp. § 819, note 2; *Sawyer* v. *Upton*, 91 U. S. 60. At law and in equity, the liability to contribute capital is treated as a debt due the corporation; and such debt passes by the assignment to the assignee.

VIRGIN, J. Where the directors of a bank voted a certain salary to its president for three successive years, but omitted to vote any sum for his fourth year's official services, this court held that, he could not maintain an action of assumpsit on a *quantum meruit* for such services. *Holland* v. *Lewiston F. Bank*, 52 Maine, 564. That case is decisive of the one at bar so far as the appellant's claim for salary is concerned, unless the vote of the directors passed at their special meeting of February 1, 1887,— several days after their corporation was duly adjudged insolvent,

—made the claim valid against the insolvent's estate. And we are clear that it did not; for the debt had no existence when the petition was filed against the corporation and hence cannot be proved against its estate. R. S., c. 70, § 25, Bump, Bank'cy, (9th Ed.) 82; *Morton* v. *Richards*, 13 Gray, 15.

The assignment of their respective wages by numerous operatives to the appellant transferred to him all the right of priority which the several assignors themselves respectively had under R. S., c. 70, § 40. *Phillips* v. *Vose*, 81 Maine, 134; *Re Murdock*, 1 Low. 362; *Re Fortune*, 1 Low. 384; *Re Brown*, 3 B. R. 720.

The reported facts, relating to the assigned wages, are so vague that we fail to perceive the practical bearing of the ruling contained in the fourth paragraph of the decree. That is to say: the fifth objection made to allowing the appellant's priority claim of wages of the persons named in "Exhibit B." is because other creditors claim the wages of the same persons,—but it does not allege that the wages claimed by the appellant and the other creditors are identical although the wage-earners are the same. And the decree declares: "Upon the fifth objection * * the court rules that the right of priority follows the labor last performed in preference to that first performed within six months whether assigned or not," and thereupon proceeds to make the application to "Exhibit B." which contains neither dates nor sums of wages earned to enable us to understand the application.

As already seen, the assignee has the same right of priority as the assignor; and hence the fact of assignment is immaterial. The statute limits the priority of operatives' wages in two respects,—time when earned and the amount. No wages are entitled to priority unless earned "within six months preceding the filing of the petition;" and only fifty dollars of those then earned, provided there had been no partial payment of the amount of wages earned within that time. If the wages earned within the specified time amount to fifty dollars or less, then the whole has priority; if to more than the sum specified and none has been paid, then the fifty dollars last earned and remaining unpaid, has the priority. Presuming this to be the meaning of the decree relating to the fifth objection and that it was correctly applied to

the facts before the court of insolvency, we pass to the next and last objection.

On November 4, 1884, the stockholders authorized the directors to allot to each stockholder as many shares of stock as he already had, on payment therefor sixty per cent of its par value which was fifty dollars per share. The appellant accepted two hundred and thirty-one shares. R. S., c. 46, § 45 provide: "The capital stock subscribed for any corporation is declared to be and stands for the security of all creditors thereof, and no payment upon any subscription to or agreement for the capital stock of any corporation, shall be deemed a payment within the purview of this chapter unless *bona fide* made in cash, or in some other matter or thing at a *bona fide* and fair valuation thereof." The acceptance and payment of sixty per cent of the new stock allotted to him must be considered as "an agreement for" those shares within the meaning and intention of the statute. Thereupon those shares of capital stock stood "for the security of all creditors of the corporation." And the unpaid forty per cent of the par value of that new stock, viz: $4,620 is as much a part of the assets of the corporation as the cash which has been paid in, and is liable to be collected if the affairs of the corporation are to be wound up or it becomes necessary to pay the debts. Statute above cited. *Sawyer* v. *Upton*, 91 U. S. 60; *Hatch* v. *Dana*, 101 U. S. 205. The appellant has no occasion to complain of the ruling of the court below, for thereby he obtains dollar for dollar for his debt to the extent of his unpaid capital stock. Whereas if the corporation is really to close up its business, he would be obliged to pay in the forty per cent and then take his per centage with the other creditors. *Sawyer* v. *Hoag*, 17 Wall. 610; *Scoville* v. *Thayer*, 105 U. S. 143, 152, and cases there cited. If there are no other creditors, then there is no reason why the appellant should not be exonerated to the extent of his debt against the corporation.

*Decree accordingly.*

PETERS, C. J., LIBBEY, EMERY and FOSTER, JJ., concurred.