BAUSMAN v. DENNY et al.

(Circuit Court, D. Washington, N. D. March 24, 1896.)

1. EQUITY—JURISDICTION—ANCILLARY SUITS.
   A suit in equity, brought by the receiver of an insolvent corporation, appointed by a federal court, against the subscribers to the stock of the corporation, to collect the balances due on their subscriptions, is within the jurisdiction of such federal court in equity, as an ancillary suit, without regard to the citizenship of the parties, or the adequacy of the remedy at law.

2. CORPORATIONS—SUBSCRIPTIONS TO STOCK—SET-OFF.
   Defendant, one of the stockholders in the R. Co., in order to enable it to obtain funds without making an assessment on the stock (which would have been burdensome to the stockholders, and to defendant in particular), gave to the company his promissory note, which was discounted by the company, and afterwards replaced by other notes of defendant, for larger amounts, the last of which, exceeding the amount due on defendant's subscription to the stock, was paid by him. The R. Co. became insolvent, and a receiver was appointed, who brought suit against defendant to recover the balance of his stock subscription. *Held,* that defendant was entitled to be credited with an amount sufficient to extinguish his subscription to the stock.

3. EQUITY PLEADING—PAYMENT AND SET-OFF.
   The rules of equity pleading do not require the defenses of payment or set-off to be set forth in an answer according to any particular form, but it is sufficient for the pleader to set forth the facts in a concise and intelligible manner.

Bausman, Kelleher & Emory, for complainant.
John R. Kinnear and Joslin, Denny & Bailey, for defendants.

HANFORD, District Judge. This is a suit in equity by the receiver of an insolvent corporation, against its stockholders, to collect from them the unpaid portions of their subscriptions to its capital stock.

As to the defendant Louisa Denny, the bill must be dismissed for failure of proof. The stock standing in her name upon the books of the company at the time of the appointment of the receiver appears to have been transferred without her knowledge or consent, and, when informed of the transaction, she refused to receive the stock. Having never subscribed for stock, nor become a holder of unpaid stock, she is not liable.

The defendant the Western Mill Company is only a nominal party. The Rainier Power & Railway Company having acquired ownership and possession of all its assets before the receiver was appointed, no decree for substantial relief can be enforced.

The defendant W. Gladstone Dickenson has failed to answer, and as to him the bill must be taken as confessed.

The defendant George Kinnear disputes the jurisdiction of the court on the ground that the parties are all citizens of this state, and the subject-matter is not cognizable in a federal court, and upon the further ground that the complainant has a plain, adequate, and complete remedy at law, and therefore the case is not cognizable in a court of equity. The suit is of an ancillary character, commenced and prosecuted by the receiver in his official capacity; and it is there-

fore properly brought in the court which appointed him, and which has jurisdiction of the principal case in which the receiver was appointed, and legal custody of the assets of the insolvent corporation. This court has jurisdiction because the suit is one arising under the constitution and laws of the United States; the authority of the receiver to sue being derived from the constitution and laws of the United States, pursuant to which he holds his appointment. Railway Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905; Railway Co. v. Harris, 158 U. S. 326, 15 Sup. Ct. 843; White v. Ewing, 159 U. S. 36–40, 15 Sup. Ct. 1018; Wood v. Drake, 70 Fed. 881–883. The mere fact that separate actions at law against each holder of unpaid stock might be maintained is not good ground for denial of equitable relief. A single suit, to which all the stockholders are made parties, and in which all equities claimed by them, singly or collectively, may be considered and adjudged, and saving the expense of separate suits against each stockholder, is not only advantageous to all creditors and stockholders, but is to be commended because more just than the method of collecting stock subscriptions by separate actions against each subscriber, whereby some may entirely escape from liability, and leave the whole burden of paying the company's debts to rest upon others, who may fail in establishing equally meritorious defenses. Numerous precedents and authorities have settled the controversy as to the jurisdiction of courts of equity in these cases, leaving no room for doubting that the jurisdiction exists. 2 Mor. Priv. Corp. §§ 896–902.

Mr. Kinnear also defends on the ground that his stock was fully paid for before the corporation went into the hands of a receiver. From the evidence offered in support of this defense, I find that Mr. Kinnear paid in cash to the company the amount of four assessments upon his stock, of $250 each, and in the month of October, 1891, he gave to the company his negotiable promissory note for $3,197.29, which note was renewed from time to time until in the month of February, 1893, when he gave to the company a new note for the sum of $5,000, and when that note became due it was taken up, and a new note for the same amount, payable to D. T. Denny, was given as payment. These several notes were indorsed by the company and by Mr. Denny and his sons, and were discounted by the company and the proceeds used in the prosecution of its business. The last note given, for $5,000, has been paid by Mr. Kinnear, principal and interest. These notes were not given by Mr. Kinnear in payment for his stock, but were intended as a loan of credit to assist the company at a time when it was incurring debts in the construction of its line of street railway, so as to enable the company to obtain funds without resorting to assessments upon its capital stock, which at that time would have been burdensome to its stockholders, and especially to Mr. Kinnear. These notes were given, however, in consideration of Mr. Kinnear's liability for his unpaid subscription. He was not indebted to the company on any other account, and would not have loaned his credit to the company for any other purpose than to avoid being required to pay for his stock. The last note given exceeds in amount the balance remaining unpaid on Mr. Kinnear's

stock, and for that reason he obtained indemnity by taking a second mortgage upon property owned by Mr. Denny. As the matter now stands, the company has received from Mr. Kinnear in assessments paid by him, and, by discounting his notes, more than the full amount of his stock subscriptions, and he has a lien upon property of Mr. Denny as security for any loss which he may sustain by reason of being compelled to pay the note.

The receiver contends that Mr. Kinnear should not be credited on account of his stock subscription for the note transaction, for the reason that the note was not intended as payment, but was a mere loan of credit, and therefore the plea of payment in the answer is not sustained by the evidence, and that the amount paid upon the note should not be allowed as a set-off or counterclaim, for the reason that it is not so pleaded in the answer, and for the further reason that a debt of the corporation to a stockholder cannot be set off against an unpaid stock subscription. As to this contention, I hold that the rules of equity pleading do not require the defenses of payment or set-off to be set forth in an answer according to any particular form; all that is required is for the pleader to set forth the facts in a concise and intelligent manner. Mr. Kinnear's answer contains a true statement of the facts as I find them to be from the evidence, which facts, in my opinion, entitle him to be credited with an amount sufficient to extinguish his entire subscription to its capital stock. In the case of Sawyer v. Hoag, 17 Wall. 610–624, the supreme court refused to allow a stockholder to set off a debt of the corporation against a promissory note given in payment for stock. But the facts in that case are so different, I cannot regard it as a precedent which the court is bound to follow in this case. The important consideration upon which that decision rests was the fact that after the corporation had become insolvent the stockholder purchased a liability for one-third of its face value, and claimed credit for it as a set-off at par. If his scheme had been successful, the capital of the company would have been actually diminished by an amount equal to the difference between the amount of the unpaid subscription and the dividend payable from the company's assets upon the liability which he purchased after the company had become insolvent. Seammon v. Kimball, 92 U. S. 362–371 is a similar case. An insolvent fire insurance company held notes given for unpaid balances of subscriptions to its capital, and was also liable to the plaintiff in the case for losses covered by policies of insurance issued to him, which he proposed to set off against the notes upon which he was liable as maker and guarantor. The court refused to allow the set-off. To have allowed it would have diminished the trust fund, in which all the creditors were entitled to share equally, because the liability upon the insurance policies did not represent actual money received. The company only received the amount of the insurance premiums. In Scovill v. Thayer, 105 U. S. 145–159, a delinquent subscriber claimed a set-off on account of money paid for stock issued to him in excess of the limit fixed by the charter of the company. The court held that money paid voluntarily, pursuant

to an illegal contract, was not recoverable, and refused to allow the set-off. In Cook Co. Nat. Bank v. U. S., 107 U. S. 445–453, 2 Sup. Ct. 561, the court held that "a trustee cannot set off against the funds held by him in that character his individual demand against the grantor of the trust," and denied to the government priority of payment of debts due to it, out of the proceeds of bonds deposited to secure circulating notes of the bank pursuant to the national banking law. Other cases which follow Sawyer v. Hoag simply hold to the doctrine that the capital of an insolvent corporation is a trust fund for the benefit of all its creditors, and that good faith towards creditors and the public requires that subscriptions to the capital of the corporation be made good by full payment in money or its equivalent. In this case the capital of the Rainier Power & Railway Company will not be diminished a particle by allowing Mr. Kinnear credit for the amount which he has actually paid, for the company has actually received in money a sum exceeding the amount of his subscription, and the fund to be distributed among its creditors ratably has been augmented by the amount so received. .

The defendant David T. Denny has paid debts of the company exceeding the amount of the balance upon the stock for which he subscribed. But said payments are not set forth in his answer, and no exemption from liability is claimed on account thereof. The answer admits that there is due from this defendant a balance of $33,750. The sum of $7,200 remains unpaid on the stock held by D. Thomas Denny, and against this liability there appears to be no valid defense. In their answer these two defendants plead the statute of limitations, but this is not available, for the reason that no right of action accrued upon the subscription contract until a call had been made. Scovill v. Thayer, 105 U. S. 143–159. As no call was made until a short time before this suit was commenced, the demand against the defendants cannot be regarded as stale, and the defense is without merit.

It will be decreed that the plaintiff recover from the defendant W. Gladstone Dickenson, $800; from David T. Denny, $33,750; and from D. Thomas Denny, $7,200,—with interest on said amounts at the legal rate from the 21st day of September, 1894, and costs, and that as to all the other defendants the suit be dismissed, with costs.