## BAUSMAN v. KINNEAR.

(Circuit Court of Appeals, Ninth Circuit. February 15, 1897.)

INSOLVENT CORPORATIONS—UNPAID SUBSCRIPTIONS—SET-OFF.

    A stockholder who is also a creditor of a corporation has no right to set off the debt of the corporation to him as against his unpaid subscription, after the corporation has become insolvent, and a suit in equity has been brought to wind up its affairs and distribute its assets, even though such debt arises upon an accommodation note given by him to the corporation because of his subscription, and to avoid an assessment on his stock. Bausman v. Denny, 73 Fed. 69, reversed.

Appeal from the Circuit Court of the United States for the Northern Division of the District of Washington.

Frederick Bausman, in pro. per.

John R. Kinnear, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The receiver of the Ranier Power & Railway Company appeals from a decree of the circuit court (73 Fed. 69) dismissing his bill as against the defendant, George Kinnear, in a suit brought against certain stockholders of the Ranier Power & Railway Company to require them to pay their subscriptions to the stock of said corporation. Kinnear held stock of the par value of $5,000. In his answer to the bill he alleged that he had paid the full amount of his subscription. The undisputed facts are as follows: On the 17th of October, 1891, Kinnear had paid three assessments of 5 per cent. each upon his capital stock, amounting in all to $750. On that date, a promissory note, due 90 days after date, payable to the corporation, for the sum of $3,197.29, was presented by an officer of the corporation to Kinnear for his signature, with the statement that Mr. Denny, the president, wanted to raise money for the company. Kinnear signed the note without question. The note was indorsed by David T. Denny, who was the president, and the largest stockholder. It was discounted at the bank, and the proceeds were used by the corporation in constructing its street railway. Subsequently to that date another assessment of 5 per cent. was made on the capital stock, and Kinnear paid his proportion thereof in the sum of $250. When the note fell due, it was renewed, and was regularly thereafter renewed until December 10, 1892. At each renewal other shareholders indorsed the note, and the interest was paid by the president or by the company. On February 15, 1893, when the last note fell due, the amount was increased to $5,000, and the increased amount thereof was obtained from the bank, and was used by the corporation as before. When the $5,000 note fell due, on May 16, 1893, it was renewed for one year; but it was made payable, not to the company, but to David T. Denny. In June of that year the receiver was appointed, and eight months later Kinnear paid the note in full. It was found in the opinion of the court below as follows:

"These notes were not given by Mr. Kinnear in payment for his stock, but were intended as a loan of credit, to assist the company at a time when it was incurring debts in the construction of its line of street railway, so as to enable the company to obtain funds without resorting to assessments upon its capital stock, which at that time would have been burdensome to its stockholders, and specially so to Mr. Kinnear. These notes were given, however, in consideration of Mr. Kinnear's liability for his unpaid subscription. He was not indebted to the company on any other account, and would not have loaned his credit to the company for any other purpose than to avoid being required to pay for his stock."

The court held, upon this state of the facts, that the defendant, Kinnear, had the right to have the money received by the corporation upon his note set off against his liability upon his stock subscription. The question presented for our consideration is whether, upon the facts so found, and the further facts as disclosed in the record, such offset was permissible.

The only evidence concerning the purpose for which the notes were given is found in the testimony of the defendant, Kinnear, and in

that of Mr. Denny, the president, and in the books and records of the corporation. The books show assessments against the stock of Kinnear in the amount of $1,000, and a payment of the same, and a balance of $4,000 unpaid. No other assessments were ever made. Mr. Kinnear testifies that he signed the note for the purpose of paying his subscription, and that, while nothing was said on the subject, he believed at the time that the company understood that the note was given for the purpose of raising money on the subscription. Mr. Denny, in his testimony, denied that there was any such understanding. When the $5,000 note was given, it will be seen that the amount thereof was $1,000 in excess of the sum remaining unpaid upon the stock of Kinnear. It appears in the evidence that in June, 1893, Kinnear, hearing of the approaching insolvency of the corporation, applied to Denny for security. He testifies that the amount for which he sought security was the $1,000 by which the note exceeded his liability on his stock subscription. Nothing was said upon that subject, however. The property which was intended as security was conveyed by Denny to Kinnear, and consisted of lots belonging to Denny, of the value, at the time of the conveyance, of about $10,000, but subject to a prior mortgage of $3,000. The consideration recited in the deed was $10,000. At the time of the trial the value of the property had so far decreased that it was worth little, if any, more than the amount of the prior mortgage. Mr. Denny testified that he understood that it was the purpose of this conveyance to secure Kinnear against liability upon the whole amount of the note. He also testified—and it is not disputed by Kinnear—that it was not until sued in this action on his stock that the latter claimed that his stock had been already paid for by the note, and that the land was intended as security only for the $1,000 in excess of the stock liability.

The facts as found by the trial court and as disclosed by the evidence amount to this: That the appellee, by lending his credit to the corporation, became a creditor thereof in an amount exceeding the amount of his liability for unpaid stock, and that the inducement for such loan of his credit was the fact that he was a subscriber to the unpaid stock of the corporation. A stockholder, who is also a creditor of a corporation, has no right to set-off as against his unpaid subscription, after the corporation has become insolvent, and a suit in equity has been brought to wind up its affairs and distribute its assets. The unpaid stock is held to be a trust fund for the purpose of paying the debts of the corporation, and as such it must be distributed among the creditors pro rata. The debt due to a stockholder is entitled to no preference over other debts, and he cannot require its payment by way of set-off, to the exclusion or postponement of other claims. The reason usually assigned for this rule is that the debt owing by the stockholder to the corporation after insolvency and that owing from the corporation to him are not in the same right, the former being a debt payable to a trust fund. The decisions upon this proposition appear to be unanimous. Sawyer v. Hoag, 17 Wall. 610; Scovill v. Thayer, 105 U. S. 143; Williams v. Traphagen, 38 N. J. Eq. 57; Thompson v. Bank, 19 Nev. 103, 7 Pac. 68; Carbon Co. v. Mills, 78 Iowa, 460, 43 N. W. 290; McAvity v. Paper Co., 82

Me. 504, 20 Atl. 82; Shickle v. Watts, 94 Mo. 410, 7 S. W. 274. In some jurisdictions the rule has been extended, not only to the distribution of the trust fund arising from unpaid subscriptions, but to the distribution of the fund obtained under proceedings to enforce the statutory liability of stockholders. Matthews v. Albert, 24 Md. 527; In re Empire City Bank, 18 N. Y. 199; Buchanan v. Meisser, 105 Ill. 638; Liquidators v. Troop, 31 Am. & Eng. Corp. Cas. 410. The reason of the rule applies to all cases of simple indebtedness from the corporation to a stockholder, and upon principle no distinction can be made on account of the purpose for which the debt was incurred, or the motives that prompted the stockholder to become a creditor. One who lends money to a corporation on account of the fact that he owes unpaid stock in the company is in no better attitude than one who lends money for other reasons. The court will not inquire into the reasons that actuated him. It is unimportant whether the appellee in this case loaned his credit to the corporation only because he was a subscriber to unpaid capital stock, or whether he loaned it on account of his desire for the success of its business, and his pecuniary interest therein as a holder of its stock. A stockholder who has advanced money to his corporation is no more entitled to the right of set-off than is the stockholder who has any other kind of claim against the company. Matthews v. Alberts, supra. The set-off, if made at all, must be made while the corporation is a going concern. It cannot be made after the insolvency has intervened, and a court of equity has been called upon to administer its affairs.

It is urged by the appellee that his defense to the suit does not rest alone upon the right of set-off, but that the evidence supports the allegation of his answer that his stock has been paid in full, and that the moneys realized on the notes which he signed for the corporation extinguished his stock liability. This view of the evidence is not only opposed to the findings of the circuit court, which, on appeal to this court, are controlling unless shown to be contrary to the weight of the evidence (Tate v. Holmes, 22 C. C. A. 466, 76 Fed. 664, and cases cited), but, in our view, it is not at all sustained by the evidence. When the first note was given, it was for an amount considerably less than the amount of the appellee's liability on his stock subscription. At that time but three assessments of 5 per cent. each had been made. Subsequently another assessment of 5 per cent. was made, and was paid by the appellee. No call was ever made upon the stock for which the money realized on the notes could have been applied in payment. Nothing was ever said to indicate that it was the intention so to apply it. At no time did the amount of the note correspond with the unpaid subscription. The last note made was $1,000 in excess of that liability. When it was known that the company was in failing circumstances, the stockholder, instead of causing the money realized on his note to be applied in payment of his stock, sought security against his liability on the note, and received a deed which recited a consideration of $10,000, and which conveyed to him property the value of which was then much greater than the amount of his liability, if the measure of his liability was only $1,000 of the note. The whole transaction would appear to be one in which Kinnear, as a stockholder, had

consented to help the corporation by the loan of his credit, with the expectation that the corporation would eventually be able to meet the note, and relieve him from liability thereupon, and with the expectation that he would probably never be called upon to pay the balance of his unpaid subscription to the stock. The decree dismissing the bill as to the defendant, Kinnear, is reversed, at the appellee's costs, and the cause is remanded for further proceedings not inconsistent with this opinion.