HAYES v. CANADA, ATLANTIC & PLANT S. S. CO., Limited.

(Circuit Court of Appeals, First Circuit.   August 30, 1910.)

No. 868.

1. CORPORATIONS (§ 308*)—OFFICERS—RIGHT TO SALARY.
   By the common law relating to corporations, neither the president nor any director is entitled to any salary unless there is an authoritative vote granting it and establishing the amount of the same.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1334–1349; Dec. Dig. § 308.*]

2. CORPORATIONS (§ 298*)—MEETINGS OF DIRECTORS AND COMMITTEES—NOTICE.
   In the absence of any statute, by-law, or practice of a corporation fixing the time or method of calling meetings of the executive committee or board of directors, a reasonable notice is necessary to the validity of such meetings; and two members of an executive committee calling at the office of the third and stating that there would be a meeting of the committee, and calling it to order at once, does not constitute such notice, unless there was some emergency which justified such action.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1296–1299; Dec. Dig. § 298.*]

3. CORPORATIONS (§ 299*)—MANAGEMENT BY OFFICERS—POWERS OF EXECUTIVE COMMITTEE—CONSTRUCTION OF BY-LAW—"FULL POWERS."
   The Canadian joint-stock companies act provides that the affairs of a corporation shall be managed by a board of directors, who, in the absence of other provisions in a special act or in by-laws, shall elect the president. It also provides for by-laws regulating the number of directors, etc., and the appointment, functions, duties, and removal of all agents, officers, and servants, and their remuneration. The charter of a corporation organized thereunder provided for the appointment by the directors from among their number of an executive committee with such powers as the by-laws should define, and a by-law provided that the directors should annually appoint from their number two directors, "who with the president shall form an executive committee, and said committee shall have full powers of the board of directors when said board is not in session." Held, that such "full powers" were limited to the conducting of the ordinary business operations of the corporation and did not include the general powers of the board of directors under the statute to amend the by-laws, change the number of members of the committee, remove a member by a majority vote, or to appoint or remove officers and fix their salaries.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1333; Dec. Dig. § 299.*]

4. CORPORATIONS (§ 298*)—MEETINGS OF DIRECTORS—SUFFICIENCY OF NOTICE.
   Notice of a meeting of the directors of a corporation, which was held on the next day after the notice was served, at a place 24 hours distant by rail from the place of service on a director, held insufficient, and the action at such meeting inimical to the interests of such director, who was a large stockholder, illegal and not binding.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1296–1299; Dec. Dig. § 298.*]

5. CORPORATIONS (§ 308*)— COMPENSATION OF OFFICERS—MODE OF FIXING.
   A corporation authorized by statute to adopt by-laws fixing the compensation of its officers cannot fix such compensation by a mere resolution of its directors.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1338; Dec. Dig. § 308.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
   181 F.—19

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action by the Canada, Atlantic & Plant Steamship Company, Limited, against Alfred S. Hayes. Judgment for plaintiff, and defendant brings error. Affirmed.

Hurlburt, Jones & Cabot, for plaintiff in error.

William M. Richardson, for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge.    In this case the Canada, Atlantic & Plant Steamship Company, Limited, called herein the "plaintiff," brought suit in the Circuit Court against Hayes, called herein the "defendant."  The plaintiff is a Canadian corporation.   Hayes was a director in the corporation and president thereof.   Claiming a salary as such president, he secured payment thereof, and this suit was brought to recover the same on the ground that no salary was legally established.   The corporation also sued to recover $506.33, paid Hayes for rent of a room at Boston.   The purpose of the room is not stated.   The corporation secured a verdict and a judgment for both sums, and Hayes sued out this writ of error.   The case turns on the propositions that an executive committee of the directors first attempted ineffectually to fix the salary and to direct the payment of the $506.33, and that thereafterwards some of the directors undertook ineffectually to ratify the action of the executive committee.   As to the $506.33, the judgment was that neither the notices for the alleged meetings of the executive committee nor that for the alleged meeting of the directors were sufficient in law, and that, therefore, both meetings were invalid.   The executive committee consisted of Hayes, Director Perry, who objected to the proceedings, and another director who acted throughout with Hayes.   The court submitted the question of the sufficiency of notice of the first meeting of the executive committee to the jury, under instructions which we will describe.   So far as the meeting of the directors was concerned, the court ruled as a matter of law that it was not legally called.

Also with reference to the salary in question, the court appears to have held that it could only have been fixed by the by-laws; and, finding that there was no formal "by-law," it to that extent, for that reason, also, directed verdict for the corporation.   The defendant claimed that any vote in the usual form answered for the word "by-law"; but we think that the salary of the president could not have been in any way established except by the board of directors, and that, as no meeting of that board was legally called, it follows that no salary could have been legally fixed.

We should say at the outset that there was no evidence that there was any practice of the corporation, or any by-law, or statute, fixing the time or method of calling meetings of either the executive committee or directors; neither was there any evidence that the common law of the domicile of the corporation is different from the common law as known in the United States.

We should here observe, for the general purposes of this opinion, that, so far as appears in this record, the law of the domicile of the cor-

poration is the common law established alike in the United States and in England, in that neither the president nor any director of a corporation is entitled to any salary unless there is an authoritative vote granting it and establishing the amount of the same.

We also should observe here that we perceive nothing in the record which exhibits any claim on the part of Hayes that he was entitled to recover the $506.33, or any part thereof, on quantum meruit. Certainly, so far as the case has been brought to us, he relies entirely both for this and his salary on the alleged action of the executive committee and that of the board of directors.

There were two alleged meetings of the executive committee; one on June 6, 1904, and one on June 24, 1904. The court instructed the jury with reference to that of June 6, 1904, that the notice must be reasonable; and it ruled further as a matter of law, as was claimed by the corporation, that it was not such a reasonable notice that, under the circumstances of this case, two members of the committee came into the office of the third and said: "We are going to have a meeting right away, and the meeting will come to order!" There was evidence sufficient to go to the jury on the proposition whether this claim was a just one. On the other hand, there was some evidence offered by Hayes that there had been a day's notice of the proposed meeting. The court instructed the jury that, if a day's notice was given, it was sufficient. The jury found in favor of the corporation on these rulings. The rulings were correct; and there was sufficient evidence pro and con to disenable us from interfering with the jury's finding of fact on this issue. Of course, there may be circumstances involving an emergency where a notice for an immediate meeting might be justified; but there was no emergency of that nature here. So far as the executive committee is concerned, there was, therefore, no legal meeting on June 4th.

It seems hardly necessary to cite authorities to sustain the rulings of the Circuit Court on the questions of law involved in reference to notifying for the meetings of the executive committee. The analogy is to be found in the rules with reference to notifying for meetings of directors. The most noticeable exception in favor of usages dispensing with notice is in regard to meetings of directors of banks of discount held in regular business hours, of which an example is found in American Exchange Bank v. First National Bank, 82 Fed. 961, 974, 27 C. C. A. 274, decided by the United States Circuit Court of Appeals for the Ninth Circuit on October 4, 1897. Convenient collections of authorities showing that a notice for a reasonable length of time is ordinarily required are found in 7 Thompson on Corporations, 7130 and sequence, and 3 Cook on Corporations (6th Ed.) 2253.

The action of the executive committee at the alleged meeting of June 4th was intended to be reaffirmed at another alleged meeting of the committee on June 24th; but June 4th Hayes and Gale undertook unlawfully to remove Perry from the executive committee, and to reduce the number of the committee to two, although it had been fixed by the corporation by-laws at three. Consequently, it is admitted by Hayes that Perry received no notice whatever of the meeting of June 24th. Therefore that meeting needs no further consideration.

We might leave the case here, but it is perhaps better to open the record in some respects quite fully. The charter provides as follows:

"(2) The directors may annually appoint from among themselves an executive committee, for such purposes and with such powers and duties as the directors or by-laws determine; and the president shall be ex officio a member of such executive committee."

The formal by-laws of the corporation provides as follows:

"Sec. 8. The directors shall annually appoint from among themselves two directors, who, with the president, shall form an executive committee, and said committee shall have full powers of the board of directors when said board is not in session."

Section 8 is expressed literally in very broad terms, in that it purports to vest the committee with the "full powers" of the board of directors. Hayes maintains that this expression "full powers" has no limitation whatever, while a true construction limits it to the ordinary business operations of the corporation. It must be so limited, as we will see on further examination of the charter and by-laws. Also, although Perry had a majority interest, absolute or contingent, and was the treasurer of the corporation, and although it appears that the proceedings attempted at the alleged meetings of the executive committee, and of the directors, were hostile to his interests in a fundamental way, and to such an extent as to deprive him of the treasurership, and although also it is said that all this does not bear directly on the case, nevertheless we should exhibit what was attempted to be done by Hayes and Gale, for the purpose of showing in a concrete way that it is not tolerable that the by-law in question should have the construction which Hayes claims for it.

The Canadian joint-stock companies act (32–33 Victoria, chapter 12) directs that the affairs of a corporation shall be managed by a board of directors, and that, in the absence of other provisions in a special act or in the by-laws of the company, the directors shall elect the president and shall regulate the allotment of stock, and the forfeiture of stock for nonpayment, and the transfer of stock. It also provides, among other things, for by-laws regulating the number of the directors, their term of service, the amount of their stock qualification, and their remuneration, if any, and "the appointment, functions, duties and removal of all agents, officers and servants of the company, the security to be given by them to the company and their remuneration." In addition to the above we have already quoted the by-law under which the executive committee was constituted, in effect that the directors should annually appoint from among themselves two directors who with the president should constitute such committee.

Hayes and Gale, at the alleged meeting held on June 6, 1904, undertook to transact the following matters: They removed Perry from his office of treasurer and appointed Gale in his place. They directed payment to Hayes of the salary, and of the $506.33, in dispute, although his salary had never before been fixed or authorized. They fixed an annual salary for Gale as managing director at $1,854.20. They amended the by-laws so that special meetings of the shareholders could be called only by the president. They amended, as we have said, the by-law establishing the executive committee so that the committee

should consist of only one director besides the president; and they amended the by-law providing for meetings of the directors so that they could be called only by the president.

It is not worth while to follow all through the meeting of the executive committee held June 24, 1904. A crucial matter which we need in this connection is that all the proceedings were in the pecuniary interests of Hayes and Gale, and they were the only persons who were voting in relation thereto. These two persons, when they undertook to amend the by-law by virtue of which they were constituted a committee, so tied up the corporation that no special meeting of the stockholders or directors could be called except by one of themselves; that is, the president. In other words, they proceeded in such a way that, if their action had been effectual, the two men, acting in their own pecuniary interests, would have absorbed the entire powers of the corporation for an indefinite period. The two also assumed by implication the power of issuing stock, thus shutting out, if they saw fit, the possibility of the existing shareholders obtaining control of the stock at any meeting thereof which any of them might find some legal method of calling. It is certainly intolerable to maintain that the words "full powers," in the provision for the appointment of the executive committee, practically divested the directors of all their functions, and built up a new foundation for it in lieu of that formally established. Such an assumed absorption of the powers of the creator by the created is too absurd to receive the approbation of any court of law. We recite these facts because they exhibit in a concrete way, by illustration, the impossibility of giving force to the words "full powers" in the by-law referred to except with limitations restricting them to the ordinary business transactions of the corporation. Having in mind that neither the president nor any director of a corporation is entitled to compensation for his services without some special provision of statute, or some action of the stockholders or other directors, and having in view the limitations necessarily implied for the reasons we have stated, we must hold that the matter of such compensation was specifically retained for the personal action of the directors by the particular enumeration thereof, notwithstanding that there were other powers, of a general nature, which might well have vested in the executive committee, which would fully satisfy the call of the words "full powers."

The general offices of the corporation, including that of the treasurer, were at Boston. Perry, Hayes, and Gale all resided there. Perry also had a summer residence at Rockland, about an hour and a half distant from Boston by rail. The time by rail from Boston to Halifax was approximately 24 hours, provided all connections were made and there were no delays. On Thursday, June 30th, Hayes, as president, called a meeting of the directors to be held at Halifax at 11 o'clock on Saturday, July 2d. Perry did not attend this meeting, but a quorum did. It was there voted to confirm the alleged proceedings of the executive committee. Then the meeting adjourned to Monday, July 4th, at 11 o'clock. At that meeting the record of July 2d was read and confirmed. There was thus only one meeting of the directors, notwithstanding Hayes says there were two, one on July 2d and one on July 4th. Hayes testifies that, on June 30th, he prepared a notice to Perry

of the meeting of the directors on Saturday, July 2d, and to himself leaving Boston at 7 o'clock p. m. on Thursday, June 30th. The train was due at Halifax at 8:45 p. m. the next evening. It also was possible by leaving Boston at 8 o'clock on Friday, July 1st, to reach Halifax at 5 minutes past 9 on Saturday morning, two hours before the meeting was to be held. Hayes left the notice with his own clerk, as he says, to deliver it next morning, July 1st. The clerk testifies that the notice was called to his attention on July 1st, between 10 and 11 o'clock in the morning, that he called up Mr. Perry's office several times without finding him, and then sent a messenger to his residence at Rockland with a copy of the notice. On this statement, it seems impossible that, by any method of transportation, Perry could have reached Halifax in season for the meeting on Saturday, July 2d. Hayes, not finding Perry on the train en route to Halifax, undertook to adjourn the meeting from Saturday to Monday, and telegraphed a notice to Perry to that effect; yet there were not two meetings, but only one. If the notice for the 2d day of July, when the important business was transacted, was insufficient, that insufficiency could not be cured in the way attempted. The court held that the notice was invalid, and that, therefore, the meeting was invalid, and clearly that ruling was correct, as there was no emergency. The result would have been the same even if the gathering of July 4th should be regarded as a new meeting.

With reference to all these proceedings, however, Hayes claims that there was a waiver by Perry, alleging: First, that he was present at the first meeting of the executive committee, and allowed things to go along until they concerned him, and then he withdrew; and, second, that, on the rule of Browne v. La Trinidad, 37 Ch. D. 1, decided October, 1887, Perry waived the lack of formal notice because he did not instantly protest in reference thereto.

Browne v. La Trinidad is far from reaching this case. It is easily supported on the common rule that, in running back to find a basis for transactions, we finally reach a point where what occurs must be accepted as de facto sufficient, or as involving a mere irregularity too remote to be considered. The irregularity in Browne v. La Trinidad was not in the fact that no notice was given of the meeting at which business was transacted, but the lack of notice related only to the preliminary meeting at which the meeting of importance was called. The State of Wyoming Syndicate, L. R. [1901] 2 Ch. Div. 431, 437, points out this peculiarity, where it says in substance that, except for this, the learned judge might apply the principle of Browne v. La Trinidad. Therefore we can lay that decision aside so far as the irregularity of the notice was concerned.

However, as we have said, Hayes makes a second proposition, namely, that, applying the further rule of Browne v. La Trinidad, Perry waived the shortness of the notice because he did not immediately protest against it before going into the meeting, and because he in fact sat in the meeting at its opening. These propositions involved questions of fact for the jury, and were to be raised by Hayes in avoidance of the other fact that the meeting was not properly notified. If he relied on these propositions, it was his duty to request the court to frame an issue for the jury with regard to them. By this we do not mean a

formal issue; but he should have asked the court to submit them to the jury, and to sum up in reference to them. This he did not do, so that no exception in reference thereto raises any question which we are called on to consider. Therefore there is no answer to the fact that neither the meetings of the executive committee nor that of the directors involved here were valid.

Nevertheless, Hayes still insists upon certain expressions used by us in the case of this same Corporation v. Flanders, 145 Fed. 875, 877, 76 C. C. A. 1. That case related to a contract with Flanders as general agent. Hayes relies on what we said on page 177 about the vote of the board of directors on August 10, 1904, as follows:

"On motion of Mr. H. McInnes, seconded by Mr. W. H. Fulton, it was resolved that all acts and resolutions passed by Messrs. Hayes and Gale as an executive committee, as per minutes submitted, said executive committee meetings' minutes dated April 28th, June 6th, and June 24th be rescinded, and the attempted confirmation of the same by the directors, at meetings held July 2d and 4th, be also rescinded."

Hayes asked the court to rule "as a matter of law" that this vote had the effect of validating the proceedings in dispute here. With nothing on the record except this vote, the request left no opportunity for any investigation whatever in regard to it. All the circumstances were shut out of the view of the jury whatever they might be; indeed, from the consideration of the court. A request of that kind, of course, could not be granted by the court. In the previous case we had no record before us as shown here, and the questions now involved were not at all pertinent there. The case assumed that the proceedings were regular except that only two of the executive committee were present at a meeting thereof. We reached the same conclusion on the proposition that it was not necessary that all the executive committee should be present which the Supreme Court lately reached, and fully explained, in reference to the appraisal of certain waterworks in Omaha v. Water Company (decided May 31, 1910) 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. ——. However, the matter seems to be of no particular consequence, because the vote of August 10th, in regard to what was done at the directors' meeting, was qualified by the word "attempted"; and certainly it cannot be said positively that the proceedings of the executive committee in a matter which was entirely beyond their jurisdiction could necessarily be held to have been affirmed by a vote merely rescinding them. All this illustrates that the ruling asked for was too arbitrary.

We have thus shown, and we think satisfactorily, that there has been no valid action of the corporation with reference to the two different sums in dispute, on the ground that there was no legal meeting in regard thereto of either the executive committee or of the directors, and on the further ground that in no event had the executive committee any jurisdiction as to the question of salary. We have so far not noticed particularly the claim of the corporation that the question of salary could be covered only by a "by-law"; with the adverse claim by Hayes that there is no distinction in law between a by-law and an ordinary resolution or ordinary vote of the corporation or of the directors. For this Hayes relies upon Faulkner v. Grand Junction Railway Co., 4

Ontario, 350. Whatever effect this decision may have in Ontario, it is not conclusive through the Dominion, and the statutes relating to the corporation considered here were Dominion statutes. Whether we are right or not in these observations, the law neither of Ontario nor the Dominion has been proven to us; therefore the case cited by Hayes simply stands as an authority for whatever it may be worth, and the established authorities beginning with Blackstone and coming down through all the text-writers, including especially Angell & Ames, Thompson, and Cook, are so overwhelming that we would not be relieved of conforming even if our own judicial instinct did not also conform. Angell & Ames, § 110, recites that by-laws are considered as private statutes for the government of the corporate body. 2 Blackstone, 475, describes them in the same way. Cook, 6th edition, speaks of them as "a permanent rule of action." Thompson, §§ 935, 936, 937, broadly distinguishes them from resolutions and regulations. Bouvier's definition runs throughout in the same line. In no way can they be held to be analogous to the hasty proceedings of the executive committee or of the directors which have been laid before us.

Especially in this case the distinction is a particularly suitable one. Having due regard to the proposition that neither the directors nor a fraction of the directors should be permitted by snap proceedings to adjust their own compensation in their own way, as illustrated by the fact that, in the present case, the action of Hayes and Gale looked entirely to their own pecuniary interest, and so, according to the best legal authorities, was prohibited, the necessity of regular proceedings by virtue of proper by-laws is irresistibly evident; and the presumption that Perry would waive any guards which a regular course of proceedings would give him is quite incredible. However, we are not disposed to rest the case entirely on these considerations. Even without their support, the judgment of the Circuit Court was correct.

The judgment of the Circuit Court is affirmed, with interest; and the defendant in error recovers its costs of appeal.