# McKean, Appellant, v. Riter-Conley Manufacturing Company.

*Corporations—Increase in salary—General manager—Board of directors—By-laws.*

The right of a director in a corporation, who is also its general manager, to recover for an increase in salary in the latter position, depends upon his ability to show an express contract or agreement by the corporation to increase his salary; and when it appears that the by-laws of the company declared that its board of directors should have the management of the business of the corporation and, from time to time, change the salary or emoluments of its managers, such a claim is barred by a finding that the board of directors never authorized such an increase.

Argued Nov. 1, 1910. Appeal, No. 206, Oct. T., 1910, by plaintiff, from decree of C. P. No. 4, Allegheny Co., Third T., 1909, No. 199, on bill in equity in case of Robert A. McKean v. Riter-Conley Manufacturing Company. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an accounting.

SWEARINGEN, P. J., found the facts to be as follows:

### FINDINGS OF FACT.

The plaintiff, who had been a director and general manager of the defendant, alleged in his bill that he for many years had had an account with the defendant which was kept upon its books; that a dispute had arisen between the parties as to what amount was due him, owing to objections made by defendant to certain items; that the account had never been settled; and that an accounting was necessary in order to determine the balance due him, plaintiff. He therefore prayed that an account be taken, that the amount due the plaintiff be ascertained, and that a decree be entered directing the defendant to pay such balance.

In its answer the defendant admitted that there was

an account upon its books with the plaintiff. It alleged that the plaintiff had without authority increased his salary and had caused such increase to be entered upon its books without its knowledge or consent; that he had withdrawn from the defendant salary to which he was not entitled and had had credited to him interest in excess of the proper amount, and that the true state of the account showed it to be indebted to the plaintiff in the sum of $46.50, for which balance it agreed that a decree should be entered with costs to the date of filing the answer. It prayed upon the entering of such decree that the bill should be dismissed.

The plaintiff filed the general replication.

The case came on for trial upon the equity trial list, testimony was taken and the case was argued by counsel and submitted.

From the evidence we find the following:

1. The Riter-Conley Manufacturing Company was granted a charter under the laws of the state of New Jersey on September 28, 1898. It was duly organized thereunder the next day to engage in the "manufacture of iron, steel and other structural work, machinery and appliances manufactured from iron, steel, or other materials." The corporation was the successor of Riter & Conley, a partnership. Its capital stock was fixed at $750,000, of which $633,000 were subscribed. Its principal office was fixed at Jersey City, N. J., but its board of directors was authorized to have offices outside of the state of New Jersey; and it did establish and has since maintained an office in the city of Pittsburg, Pa., where the greater part of its business has been transacted. It had two plants, one on Preble avenue, Allegheny, Pa., and the other at Leetsdale, Allegheny county, Pa. The business transacted was very large and very profitable.

2. Thomas B. Riter was the owner of a very large amount of the stock, much more than one-half of it. At the organization of the corporation said Thomas B. Riter and John S. Craig, Peter Kerner, William C. Coffin,

Herbert F. Hatch and Robert A. McKean, the plaintiff, were chosen directors. Under the by-laws which were adopted the number of directors was fixed at six and a majority of those in office was necessary to constitute a quorum for the transaction of business. Mr. Riter was elected president, Mr. Coffin, vice president, and Mr. Craig, secretary and treasurer. Mr. Riter continued as president and director until his death April 23, 1907. Mr. Coffin and Mr. Craig continued in their offices as directors until January, 1908. The said Robert A. McKean also continued as director until November 11, 1907. He had been in fact the general manager of the previous partnership and shortly after the organization of the corporation his position was officially designated general manager; and he continued in that position until January, 1908. He never was one of the executive officers of the corporation. His duties as general manager required him to look after the manufacturing part of the business and the erection of work. His salary as general manager was fixed about the time of the organization of the corporation at $4,000 per year.

3. The plaintiff was one of the original subscribers to the capital stock of said corporation. An account with the plaintiff was opened upon the books of the corporation about the time of its organization. In this account he was charged with his subscription to the capital stock and with such other moneys as he drew from time to time; and in said account he was credited with such dividends as he was from time to time entitled to receive, and with interest upon any credit balances which were shown by the books to be in his favor. From and after July 1, 1903, the plaintiff had a balance to his credit in the account aforesaid and in January, 1908, said balance was apparently $62,600. But the salary to which the plaintiff was entitled was not entered in said account except as hereinafter specified in findings of fact No. 4. Each month the amount due the men entitled to receive salaries, including the plaintiff, was embraced in one voucher,

charged to "Office Expense" or pay roll, and each received his proper amount out of the money so drawn.

4. As above stated, Thomas B. Riter, the president of the defendant corporation, died April 23, 1907. About two or three weeks afterwards, the said William C. Coffin, John S. Craig and Robert A. McKean, the plaintiff, were together in Mr. Craig's office. The meeting appears to have been a casual one. Mr. Craig and Mr. McKean related conversations which as they alleged they each had had with Mr. Riter relative to an increase of their salaries. The following paper was then made out in favor of the plaintiff, which was offered in evidence and marked exhibit No. 1.

"April 1, 1907.

"Credit.

"Robert A. McKean.

"Salary from October 1, 1901, to Sept. 30, 1906.
                    $5,000

"Equal five years   4,000@$1,000=$5,000

"Salary from Oct. 1, 1906, to March 31, 1907
                    $3,000

"Equal 6 months   2,000@$1,000=$1,000  $6,000.00

"O. K.

"Wm. C. Coffin.

"J. S. Craig."

At the same time the following paper was made out in favor of the said John S. Craig, which was offered in evidence and marked exhibit "A."

"April 1, 1907.

"Credit.

"J. S. Craig.

"Salary from Oct. 1, 1901, to March 31, 1907.
                    $6,000

"Equal 5 years, 6 mos.   4,000@$2,000=$11,000.

"O. K.

"Wm. C. Coffin.

"Robert A. McKean."

Both of these papers were written by said John S. Craig and they were handed to Thomas D. Gillespie, the bookkeeper and auditor of the corporation. Pursuant thereto Mr. Gillespie entered upon the books of the corporation credits in favor of the said plaintiff and the said Craig. The sum of $6,000 was credited by Mr. Gillespie in the aforesaid account of the plaintiff, it being the only instance when salary was credited to him therein. The entry was as follows: "1907, April 30th. General Expense 11–198 $6,000.00." There were afterwards credited to the plaintiff the following: September 30, 1907, $912.50, interest on his credit balance. December 31, 1907, $837.07, interest on his credit balance. Said credit balances include the aforesaid sum of $6,000. The plaintiff was also subsequently credited with interest on credit balances which the plaintiff claimed was $22.50 in excess of the amount to which he was entitled.

5. No meeting of the board of directors of the defendant corporation was called for the purpose of taking action upon the increase of salaries mentioned in findings of facts No. 4, nor was any meeting called for any purpose. The said meeting of Mr. Coffin, Mr. Craig and Mr. McKean was not a meeting of the board of directors of the Riter-Conley Manufacturing Company. No minute of any action then taken was ever made. The only authority which Mr. Gillespie had for entering said credit in favor of the plaintiff was the paper exhibit No. 1, mentioned in findings of fact No. 4. Said paper was not filed among the records of the defendant but it was retained by Mr. Gillespie until he left the defendant in January, 1908; and it still continued in his possession until May 24, 1909, when he delivered it together with said exhibit "A" to Mr. Fletcher, the president of the defendant corporation. The evidence does not show that the entry of $6,000 in favor of the plaintiff mentioned in findings of fact No. 4 was brought to the attention of any officer, director or stockholder of said corporation other than the four gentlemen therein mentioned prior to about Decem-

ber 10, 1907; nor does the testimony show that any one except the said four knew of the existence of said exhibits No. 1 and "A" prior to May 24, 1909.

6. Very little appears in the minutes of the board of directors of said corporation relative to its general business although the transactions appear to have amounted to millions of dollars per annum. But the board did meet frequently and minutes were made of the business transacted by it. The by-laws provide that the board of directors shall have the management of the business of the corporation and among other things shall have power "to appoint and at their discretion remove or suspend such managers, subordinates, assistants or otherwise and clerks, agents and servants permanently or temporarily as they may from time to time think fit and to determine their duties and fix and from time to time change their salaries or emoluments."

Nothing appears upon the minutes of the corporation prior to November 11, 1907, with respect to salaries or their increase. The testimony indicates that Mr. Riter fixed the salaries of the executive officers and the heads of departments. But the testimony does not show that the fixing of salaries was ever left to any other individual or set of individuals except the board of directors as aforesaid.

7. The plaintiff's salary was originally fixed at $4,000 per annum by Mr. Riter. Some time during the year 1901 the plaintiff had a conference with Mr. Riter in which he asked for an increase of his salary from $4,000 to $5,000 per annum. Several similar conferences were held by them afterwards. In the spring of 1906 the plaintiff again asked Mr. Riter for an increase, this time to $6,000 per annum. Mr. Riter declined to make said increase. While he raised no objection he replied substantially in each conversation that he would make it satisfactory or would arrange it later. In the meantime the plaintiff's salary at the rate of $4,000 per year was regularly paid him in the manner described in findings of

fact No. 3. After May 1, 1907, the plaintiff's salary was regularly paid him until November 1, 1907, in the same manner, but at the increased rate of $6,000 per year.

8. At the next annual meeting of the stockholders of the defendant corporation after the death of Mr. Riter, held October 24, 1907, a new board of directors was elected. Said Wm. C. Coffin and John S. Craig were the only members of the old board who were re-elected. The plaintiff was not re-elected. November 11, 1907, the board organized by the election of H. A. Carpenter as president, Wm. C. Coffin as vice president, John S. Craig, secretary and treasurer, and Robert A. McKean as general manager. At a subsequent meeting of the board December 9, 1907, the salaries of said positions were fixed at $7,500 per annum each, as appears by the minutes of the board of directors of that date.

9. In the meantime an audit of the affairs of said corporation had been ordered and was then in progress. Within a day or so after the last named meeting of the board of directors the auditors called the attention of several of the board to the entry of $6,000 in favor of the plaintiff mentioned in findings of fact No. 4. On January 22, 1908, the resignations of Mr. Coffin and Mr. Craig as officers and directors of the defendant corporation were accepted and the same day the resignations of the plaintiff and of T. D. Gillespie from their positions were also accepted. On January 27, 1908, an agreement was made between the defendant corporation and the plaintiff, John S. Craig, William C. Coffin and several others whereby the corporation purchased all their stock therein and agreed to pay for the same and also their credit balances in the manner therein specified. It was further agreed that the books of the corporation as they then stood should not be held conclusive upon the defendant, the audit being then in progress, but that said books might be corrected later and that the said parties (including the plaintiff) should not be bound by the results of said audit, but that corrections should be made in ac-

cordance with the actual facts. Pursuant to this agree-ment the defendant paid the said plaintiff for his said stock and it also paid to him the amount of his credit balance except the sum of $7,421.05 to which it claimed he was not entitled. When the audit above mentioned was completed, the defendant on March 27, 1908, which was within a reasonable time, notified the plaintiff of its said objections to the items aforesaid of his account ag-gregating $7,421.05. When the defendant filed its answer, however, it admitted that the plaintiff was entitled to $46.50, for which it tendered a decree with costs to the date of answer, but it declined to pay the balance, to wit, $7,374.55.

### CONCLUSIONS OF LAW.

1. The Riter-Conley Manufacturing Company, the de-fendant, never made a contract with Robert A. McKean, the plaintiff, whereby he became entitled to a salary of $5,000 per year from October 1, 1901, to September 30, 1906, and to a salary of $6,000 per annum from October 1, 1906, to March 31, 1907, and to a like salary from the latter date until November 1, 1907. Neither was such a contract ever ratified by the defendant; nor is the de-fendant estopped from contesting the claim of the plain-tiff as set forth in his bill of complaint.

2. The entry in the plaintiff's account upon the books of the defendant of a credit of $6,000 on April 30, 1907, was unauthorized and without the knowledge or consent of the defendant. Likewise the credit to plaintiff of in-terest upon said sum of $6,000, aggregating $172.50, was unauthorized, and without the defendant's knowledge or consent.

3. The payment to the plaintiff of the sum of $1,166.67 being the salary received by him from April 1, 1907, to November 1, 1907, in excess of salary at the rate of $4,000 per annum was unauthorized by the defendant and was without its knowledge or consent.

*Error assigned* was decree of the court.

*A. Leo Weil*, with him *Charles M. Thorp* and *H. D. Montgomery*, for appellant.

*O. C. Bowers*, with him *J. Gilmore Fletcher* and *Edward B. Vaill*, for appellee.

PER CURIAM, January 3, 1911:

The appellant was one of the directors and the general manager of the defendant company, and in this proceeding, instituted by him for an accounting, his contested claim is the one he makes for an increase in his salary as general manager from October 1, 1901. His right to recover this depended entirely upon his ability to show in the court below an express contract or agreement by the company employing him at that time to thereafter pay him more than he was then receiving for his services. He makes no claim—as, of course, he could not—on a quantum meruit for the increase in his fixed salary, and he was bound to know the provision in the by-laws of his company which declares that its board of directors shall have the management of the business of the corporation and fix and, from time to time, change the salary or emoluments of its managers, subordinates, assistants, agents and servants. Among the findings is one that the board of directors of the defendant company never authorized an increase in the appellant's salary, and the decree is affirmed on the first three conclusions of law logically reached by the learned trial judge in view of the facts correctly found by him.

Appeal dismissed at appellant's costs.