**BRAMPTON WOOLEN CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 2476.**

Circuit Court of Appeals, First Circuit.

Nov. 26, 1930.

Henry M. Ward, of Washington, D. C. (Harry A. Fellows, of Washington, D. C., on the brief), for petitioner.

F. Edward Mitchell, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, and Claude R. Branch, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., on the brief), for Commissioner.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

The Board of Tax Appeals affirmed the determination by the Commissioner of Internal Revenue of a deficiency in the taxpayer's profits for 1918, and it appealed to this court. Under section 234(a) of the Act of 1918, 40 Stat. 1077, it is provided:

"Sec. 234. (a) That in computing the net income of a corporation * * * there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid *or incurred* during the taxable year in carrying on any trade or business, *including a reasonable allowance for salaries or other compensation for personal services actually rendered.*"

The sole question now presented is whether additional salaries were *incurred* during 1918 and were improperly disallowed by the Commissioner and by the Board.

The appellant was a textile manufacturer with a plant in Newport, N. H., and another (installed during 1918) in Sunapee. The entire capital stock, $25,000 common and $50,000 preferred, was held in equal shares— $5,000 of common and $10,000 preferred— by each of five stockholders, of whom four were directors and officers. These four were Sam D. Lewis, president, Frank P. Rowell, vice president, John McCrillis, secretary-

treasurer, Vincent J. Brennan, Sr., general manager. The fifth director, Vincent J. Brennan, Jr., son of the general manager, was not a stockholder. The fifth stockholder was Mrs. Lizzie M. Richards. She was represented by John McCrillis. The Board found as follows:

"The directors of the corporation held numerous informal meetings during the year 1918 at which the matter of increasing the salaries of the officers was discussed. *It was generally agreed that the amount of the compensation then authorized and being paid to the officers was insufficient, and that there should be substantial increases commensurate with the duties performed.* However, at no time during 1918 did the board of directors of the petitioner, by formal or informal action, vote, fix or agree upon the *amount* of additional salaries or compensation to be paid to its officers, *or take any affirmative action with respect thereto.* After considerable informal discussion, *it was agreed* that any increase in the compensation paid to the officers should bear some reasonable relation to the *gross* and *net* earnings of the company for 1918, and it was also agreed to consult auditors for the purpose of determining what would constitute reasonable salaries in comparison with other plants. *For these reasons, decision of the matter was deferred until after the close of the calendar year 1918, and no additional compensation was agreed upon or voted in 1918."*

Pursuant to this arrangement, at a formal meeting of the Board of Directors held on June 11, 1919, the Board voted additional salaries aggregating $30,000, the additions being as follows:

General manager, Brennan, Sr., $10,000; president, Sam D. Lewis, $8,500; secretary-treasurer, McCrillis, $8,500; vice president, Rowell, $3,000. These additional salaries were promptly paid.

The Board ruled that the evidence was "not sufficient to establish that any legal liability was incurred by the petitioner corporation during 1918 to pay the additional compensation in controversy, and since the amount was not accrued in 1918, it is not an allowable deduction from income for that year."

■ The overwhelming weight of authority requires a reversal of this ruling. The question is whether the officers rendered services "under such circumstances as to raise the fair presumption that the parties intended and understood that they were to be paid for"—quantum meruit. Fitzgerald Co. v.

Fitzgerald, 137 U. S. 98, 111, 11 S. Ct. 36, 34 L. Ed. 608; Montana Co. v. Dunlap (C. C. A.) 196 F. 612, 619; Pew v. Gloucester Bank, 130 Mass. 391, 395; National Loan & Investment Co. v. Rockland Co. (C. C. A.) 94 F. 335, 338. See, also, Fletcher's Cyc. Law of Private Corporations, sec. 2738, and cases cited.

■■ Obviously, directors cannot technically contract with themselves; but it is well settled that when, as in this case, the directors, or a majority thereof, are also the executives and managing forces of the corporation, they may informally agree for reasonable compensation for their services rendered to their corporation. Of course such agreement, formal or informal, must be for only *reasonable* compensation. They may not use their powers in fraud of rights of minority stockholders, Von Arnim v. American Tube Works, 188 Mass. 515, 74 N. E. 680; or of the government as tax collector, Botany Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 73 L. Ed. 379; Becker Bros. v. United States (C. C. A.) 7 F.(2d) 3, 6; United States v. Phila. Knitting Co. (C. C. A.) 273 F. 657.

■ But in this case the finding of the Board, fully supported by the evidence, indicates that the officers acted conscientiously and moderately in that regard. When, in June, 1919, they knew the gross and net earnings of the company for 1918, they then proceeded to liquidate the liability which was incurred during the year 1918, by the informal agreement then made, for the amounts above stated. They also properly included in their vote that the treasurer should set up in his balance sheet of December 31, 1918, this amount of $30,000, as reserved for salaries. It was so set up, and tax returns were made on that basis. The Board found that the petitioner kept its books by the accrual method.

It follows that the liability for additional compensation was *incurred* during 1918, and was deductible under section 234(a), supra.

■ On a motion for rehearing before the Board, the appellant asked for a finding that each of the additional salaries was a reasonable amount for the services rendered. The Board refused to make such a finding, on the ground that its ruling that no liability was incurred therefor, during the taxable year, would make such finding immaterial—merely a moot question.

We think the Board should have recognized that its rulings of law were subject to review by this court, and have made all reasonably requisite findings of fact.

While there is no contention before this court that the salaries voted and paid in June were not reasonable in amount, the only question argued here is that the liability therefor was not incurred in 1918. But we cannot say that there is no evidence in this record warranting a finding that the additional salaries were not reasonable.

The result is that the decision of the Board of Tax Appeals must be reversed, and the case remanded, with instructions to find whether the additional salaries were reasonable and to recompute the tax for 1918 accordingly.

The decision of the Board of Tax Appeals is reversed, and the case is remanded to the Board for further proceedings not inconsistent with this opinion.

WILSON, Circuit Judge (dissenting).

I cannot agree to the disposition of this case in accordance with the opinion.

I do not think the record warrants the conclusion implied, at least, in the opinion that there was any agreement, formal or informal, by the corporation made in 1918, which bound the corporation, and therefore there was an accrued liability in 1918.

The record shows that there was never more than informal discussions by the directors during 1918 and the expression of individual opinions that their salaries were not sufficient, and that they should be increased to an amount which would more nearly compare with their value to the company, and in proportion to the earnings of the company during that year. The record shows that there never was any corporate action by vote or resolution authorizing the payment of any sum in addition to their regular salaries for any unusual services performed by these officers in 1918 until June, 1919.

The directors realized that the year 1918 was to be a profitable year by reason of their war contracts, yet the gross business done was not increased over other years. If the salaries had not been increased, each one of the officers might have received, if the $30,000 had been disbursed as dividends, $6,000, since each owned one-fifth of the capital stock. A widow of a former stockholder owned the other fifth, but she did not benefit by the proceedings adopted for the distribution of the profits of 1918. The only way in which the director McCrillis represented her was as executor of her husband's estate or possibly as her legal adviser.

Of the four directors benefited by the increase, one was general manager, one president and auditor, one vice president, and the fourth clerk or secretary and treasurer. Their salaries as such officers for 1918 had been previously fixed by a vote or resolution as follows: General manager, $10,000; president and auditor, $800; clerk and treasurer, $800. The vice president had no fixed salary prior to the vote of June, 1919. It may be assumed that as directors they receive no compensation since the vice president had none.

Fletcher in his work on Corporations says of directors: "It is well settled" "by an overwhelming weight of authority" that "as a general rule directors or trustees of a corporation are not entitled to recover any compensation or salary for performing the usual or ordinary duties pertaining to their office, unless compensation is provided for in the charter or authorized by a by-law or resolution of the Board of Directors *before* the services are rendered. Regardless of the value of such services the law *will not imply a promise* on the part of the corporation to pay, and it is immaterial that the services were performed with the expectation of compensation, or with the general understanding among the directors themselves that they should receive compensation." (Italics mine.) Fletcher Cyc. Corp., Vol. 4, §§ 2734, 2735; Corinne Mill, Canal & Stock Co. v. Toponce, 152 U. S. 405, 14 S. Ct. 632, 38 L. Ed. 493; Pac. Imp. Co. v. Chattanooga S. R. Co. (C. C.) 189 F. 161; Hayes v. Canada, A. & P. S. S. Co. (C. C. A.) 181 F. 289; Steam Dredge No. 1 (D. C.) 87 F. 760; Smith v. Putnam, 61 N. H. 632.

Fletcher also says, Vol. 4, § 2736: "The cases cited to the general proposition that directors and trustees are not entitled to compensation, unless expressly agreed upon before the services are rendered, *include cases where the directors have sought recovery for services performed as officers*, and in a number of cases the same rule which applies to directors is repeated with the word 'officers' substituted for the word 'directors.' Thus, it is held frequently that officers of a corporation are not entitled to any compensation or salary unless express provision is made therefor before the services are rendered, either by charter provision, by-law or resolution." (Italics mine.) Title Ins. Co. v. Home Tel. Co. (D. C.) 200 F. 263; Farmers' L. & T. Co. v. Housatonic R. R. Co., 152 N. Y. 251, 254, 46 N. E. 504; McKean v. Riter-Conley Mfg. Co., 230 Pa. 319, 79 A. 561; Kilpatrick v. Penrose Ferry Co., 49 Pa. 118, 88 Am.

Dec. 497; Pew v. First National Bank of Gloucester, 130 Mass. 391.

This authority further says, see Vol. 4, § 2737: "By the weight of authority, the rule preventing the payment of compensation to directors, in the absence of an express agreement or provision allowing such compensation, applies when the directors fill other offices. Thus it is held that there can be no recovery of compensation, unless expressly provided for, when a director serves as president or vice president, as secretary and treasurer, as secretary, as treasurer or cashier, as a member of an executive committee, or similar offices. As was said in one case, that 'From the employment of an ordinary servant, the law implies a contract to pay him. From the service of a director, the implication is that he serves gratuitously. The latter presumption prevails, in the absence of an understanding or agreement to the contrary, when directors are discharging the duties of other offices of the corporation to which they are chosen by the directors, such as those of president, secretary and treasurer." Pac. Imp. Co. v. Chattanooga S. R. Co., supra; Hayes v. Canada, A. & P. S. S. Co. (C. C. A.) 181 F. 289; Busell Trimmer Co. v. Coburn, 188 Mass. 254, 74 N. E. 334, 69 L. R. A. 821; Crumlish's Adm'r v. Central Imp. Co., 38 W. Va. 390, 18 S. E. 456, 23 L. R. A. 120, 45 Am. St. Rep. 872; Parker v. Nickerson, 137 Mass. 487; Cook on Corporations, Vol. 2, § 657, page 1924; Clark & Marshall, Vol. 3, § 671a; Thompson on Corp., Vol. 7, § 8581; McAvity v. Lincoln P. & P. Co., 82 Me. 504, 20 A. 82.

If this be the law, as stated by the eminent authorities above quoted, which the decided cases bear out, then these directors and officers could not claim any implied liability existed on the part of the corporation for any services performed in 1918, pertaining to their duties as directors, president, vice president, secretary, and treasurer, even though they were by reason of conditions during that particular year greater than formerly, unless there was a by-law or formal resolution previously authorizing such increase. No implied liability existed from mere informal discussions, or any liability, unless the directors took some formal action.

This leaves open the question as to whether they performed any services outside of their duties as such officials, and whether such additional duties were reasonably worth the sums voted.

I do not quarrel with the propriety of the directors voting themselves the salaries or "bonus" in 1919 for services performed in 1918, if equal to the value to the corporation of their services in discharge of their duties as officers, or for services performed outside of their duties as such officers, even if not previously authorized. Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 74 L. Ed. 733, seems to sustain them in this, but I doubt whether the vote of 1919 can be held to be in settlement of any legal obligations incurred in 1918 to the respective amounts voted. The Ox Fibre Brush Case required that the increase be accounted for in the year when made, unless in settlement of a liability actually accrued in a previous year.

If the authorities cited in the opinion are examined, it will be found that the officer in each case recovered because of the performance of duties outside of those incumbent on him as such official; as where a president performed the duties of general manager, and the cases actually support the principles I have laid down.

The testimony of McCrillis, Lewis, and Brennan, Jr., is very illuminating on this question. The most McCrillis said he did was to attend frequent meetings of the directors, discuss affairs of the company, keep records, attend to some financing, and perform other similar duties, all of which were incumbent on him as director, secretary, and treasurer of the company, for which services his salary had already been fixed. If it was not enough, it was for the directors to fix it by a formal vote. There was no implied liability to pay more, because the duties were more onerous that year, or that all the directors informally agreed it should be more and that later they would add to it. The only services McCrillis performed that cannot be fairly said to be outside his duties as director, secretary, and treasurer, were legal services in looking up some titles and perhaps in passing on a few conveyances. There is no evidence to warrant the addition of $7,800 for such legal services as he performed during that year. He was clerk of the superior court for his county, president of a bank, did an insurance business, and was an executor and administrator of estates. Whether he could, under these circumstances, perform nearly $8,000 worth of legal services for this company in one year may reasonably be open to doubt.

The president, Mr. Lewis, also testified that he had additional burdens that year and gave a great deal of time to overseeing the construction of a new mill or the reconstruction of an old one; that he drew the plans

and supervised the construction. He walked through the mill, attended many meetings of the board, and discussed matters with the general manager. It is difficult to tell from the evidence just what he did that was outside the duties which as president and director he owed to the stockholders, unless his services in lieu of an architect, in drawing plans and superintending the construction of the new mill, were extra services he was not bound to perform. Much of the extra time he testified that he gave to the business during 1918 was clearly devoted to services pertaining to his duties as president and director, for which there was no implied liability on the part of the corporation.

This applies with even greater force to the vice president, Rowell. There is no evidence that he actually did anything that was outside of his duties as a director.

With all this additional work which they claimed they were obliged to do, yet the volume of business was no larger than in previous years. Whatever additional time the officers put in must, therefore, have been due to the construction of an addition to their plant and to the fact that they were doing business with the United States government on new work.

While the increase in the general manager's salary may have been reasonable for the services performed during that year, the record does not disclose that he did anything outside of his duties as a director or as general manager for which he already had a contract at a fixed salary.

For the directors of a corporation to agree among themselves that their general manager was entitled to more salary, but upon which they never took any formal vote, would impose no liability on the corporation to pay any additional amount over that which had already been fixed, unless he performed duties outside of that office. See cases cited above.

An express contract excludes an implied one. The general manager, secretary, treasurer, and president each had an express contract as to salary. No implied promise to pay more for the performance of the duties pertaining to their several offices could arise from a general discussion that the salaries were inadequate, and that later an adequate increase would be voted.

It is also significant that the vote in June, 1919, was to pay an additional salary or "bonus." A bonus surely is not a liquidation of a prior liability. It is a gratuity.

The testimony as to the tremendous amount of work done in 1918 over that of prior years sounds somewhat padded. It looks suspiciously like the usual case of cutting down profits and taxes by increasing salaries.

The case should go back but only to determine what, if anything, these officers actually did in 1918 outside of their duties as directors, officers, and general manager, and what is a fair compensation therefor; and, in so far as there was any liability incurred in 1918 for additional services that did not pertain to their duties as either director, president, vice president, secretary or treasurer, or general manager, the corporation should be allowed to deduct it on the accrual basis theory. Any additional amount voted them should be left to be determined whether it should be properly deducted in 1919 under Lucas v. Ox Fibre Brush Co., supra.