## HOWARD SHEEP CO. v. UNITED STATES.

### No. H–168.

Court of Claims.

March 7, 1932.

This case having been heard by the Court of Claims, the court, upon the evidence adduced, makes the following special findings of fact:

Plaintiff is a corporation engaged in the business of sheep-raising, and made its return for the calendar year 1918 in March, 1919, upon an accrual basis of accounting, of its gross income and statutory deductions and credits, including as a deduction $15,000 for salaries of officers, and thereby computed its taxable net income and statutory invested capital, and the profits and income taxes computable and assessable on same, all as required by the Revenue Act of 1918 (40 Stat. 1057), and paid the resulting taxes in the amount of $2,147.34 in due course, and the amount so paid is not in controversy in this proceeding.

The Commissioner of Internal Revenue, upon examination of same, revised net income and statutory invested capital and determined taxable net income to be $35,968.78 and invested capital to be $95,006.50, and upon same determined in due course total profits and income tax of $16,299.31, which included an additional tax or deficiency of $14,151.97, in addition to the original taxes of $2,147.34 assessed and paid by plaintiff, and thereafter assessed and required plaintiff to pay said additional tax or deficiency of $14,151.97 for the year 1918.

In determining said taxable net income of $35,968.78, said commissioner ruled the sum of $15,000, claimed in its original return by plaintiff as a deduction for officers' salaries in said taxable year, was only allowable to the extent of $2,400 actually paid by plaintiff to its manager in said year, and disallowed the difference of $12,600 which was not actually paid in said year, and restored and included said disallowance in the determined taxable net income of $35,968.78.

If the deduction of $12,600 (not allowed by the Commissioner) was made from the determined taxable income, it would reduce the same to $23,368.78 and the income tax liability to $9,423.87 instead of $16,299.31.

The deficiency or additional tax for 1918 of $14,151.97 was satisfied and paid by credit against same of $1,987.91, being an overpayment of taxes for 1917 by plaintiff determined by said commissioner to be refundable to plaintiff and by payment in cash, but under protest of $12,164.06 on December 26, 1925.

In 1918 and for many years prior thereto, the plaintiff had been and was engaged in the business of raising sheep. It owned approximately 28,000 acres of land, leased about the same number of acres, and had also some sheep-grazing permits. Its flocks averaged between 18,000 and 20,000 sheep.

During the period herein involved, Charles E. Howard, an experienced sheep raiser, was president and general manager; T. A. Riordan, vice president; and M. J. Riordan, secretary and treasurer of the corporation. Howard owned one-half and the Riordans each one-fourth interest in the corporation.

The sheep business is considered a very hazardous one, being subject to marked fluctuations in the commission market, and is greatly dependent for its success or failure upon the proper management of the flocks.

Howard was in full and complete charge of the management and conduct of the plaintiff's business. The Riordans attended to financial matters, which they handled through the offices of the Arizona Lumber & Timber Company, a company owned and controlled by them, without charge to the plaintiff for such services. Besides the services rendered to the Howard Sheep Company, the Riordan brothers in 1918 held interests and took an active part in the management and operation of numerous other commercial and investment

enterprises. From the date of the incorporation up to March 1, 1919, the only salary paid to the above-named officers was a salary of $2,400 paid annually to Howard.

Anticipating good earnings in the year 1918, the officers consulted a tax adviser and made independent inquiries for the purpose of ascertaining salaries paid to officers of other sheep companies with the intent of providing for the payment of like salaries to the officers of the plaintiff. With this purpose in mind, the determination of amounts to be paid to each officer was left to Mr. Koch, manager, and Mr. Tepe, accountant, of the Arizona Lumber & Timber Company, and Mr. Claude Parker, a tax adviser. Illness and other causes delayed their consultation and determination, and the decision as to what would be a fair salary for the officers was not made until the end of January or February, 1919. About March 1, 1919, a formal resolution of the company was passed that a total salary of $15,000 was a reasonable amount to be paid to the officers of the Howard Sheep Company, and that amount was entered on the company's books as salaries to its officers as of December 31, 1918, and was continued to be carried on the company's books for the years 1919 and 1920. The amount of salary was agreed upon as follows: Howard, as president, was to receive $3,600 annually, and the sum of $2,400 as field manager, or a total of $6,000; M. J. Riordan, for his services as secretary and treasurer of the Howard Sheep Company, was to receive $4,500; and T. A. Riordan was to receive a like amount of $4,500 for his assistance, advice, and services rendered said company as its vice president. The officers never drew or received these respective amounts of salary except the $2,400 paid annually to Howard as manager, but said amounts were applied to their credit on the company's books.

About January 18, 1926, plaintiff filed a claim for refund on the ground that its net income was wrongfully and illegally overstated in the amount of the salary disallowed as a deduction by the commissioner, and more than six months thereafter instituted this action to recover $6,875.44 and interest, before the claim for refund was acted upon by the Commissioner. After the action was begun the claim for refund was rejected.

The evidence shows that the several salaries of the officers of the plaintiff, provided for by said resolution, and entered upon the books, as above stated, were not unreasonable allowances for the personal services rendered by said officers in the year 1918.

Robert A. Littleton, of Washington, D. C. (Camden R. McAtee, of Washington, D. C., Blaine B. Shimmel, of Phoenix, Ariz., and Mason, Spalding & McAtee, of Washington, D. C., on the brief), for plaintiff.

Bradley B. Gilman, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen. (James A. Cosgrove, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, WHALEY, WILLIAMS, and LITTLETON, Judges.

GREEN, Judge.

This action is begun to recover an alleged overpayment of income and profits taxes which were assessed against and paid by the plaintiff for the year 1918. It appears that in the forepart of 1919 a formal resolution was adopted by the plaintiff authorizing the payment of additional salaries to its officers as of December 31, 1918, and plaintiff claims that the amount of additional salaries so provided for should be allowed as a deduction from the amount of its income for the year 1918. This the Commissioner refused to do, the plaintiff paid the amount of additional taxes resulting from this determination under protest, and, having filed a claim for refund, now asks judgment for the amount so paid, together with interest. The sole issue in the case is as to whether the commissioner's action was correct.

The question upon which the case turns is primarily one of fact as to whether the amount of additional salary which the plaintiff claims should have been allowed as a deduction was, in the language of the statute, "paid or accrued" in the year 1918. There is no claim that it was paid in 1918, or has since been paid, although the officers whose salaries were increased were credited with the amount of the increase on the books of the company. But the company kept its books on an accrual basis, and it is urged on behalf of plaintiff that these additional salaries "accrued" in December, 1918.

The testimony shows that the plaintiff was engaged in the business of sheep-raising on a large scale, owning approximately 28,000 acres of land, leasing about the same number of acres, and also had some grazing permits. Its flocks averaged between 18,000 and 20,000 sheep. No question is raised as to the value of the services of its officers, nor is there any claim made that the additional sums voted as salaries were unreasonable in amount. Defendant insists that no obligation to pay these

salaries arose in 1918, and that no deduction could properly be made from income of that year on account of the change in the salaries.

Prior to the time when the change was made in the salaries, the president of the company was the only one of its officers who received any salary, his pay being $2,400 a year. The findings show that in 1918, anticipating that the business would be quite profitable, the officers of plaintiff consulted a tax adviser and made inquiries for the purpose of ascertaining salaries paid to the officers of other sheep companies with the intent of providing for the payment of like salaries to the officers of the plaintiff. Such action of course would result in the plaintiff paying a smaller amount of taxes. In order to carry out this intent to increase the salaries, the determination of amounts to be paid each officer was left to Mr. Koch, manager, and Mr. Tepe, accountant, of the Arizona Lumber & Timber Company, and Mr. Claude Parker, an expert tax adviser. Various causes delayed the consultation of these parties and determination of the matter. The decision as to what would be a fair salary for the officers was not made until along in January or February, 1919. About March 1, 1919, a formal resolution of the corporation was passed that a total salary of $15,000 was a reasonable amount to be paid to the officers of the Howard Sheep Company, and that amount was entered upon the company's books as salaries for its officers as of December 31, 1918, and was continued to be carried on the company's books for the years 1919 and 1920. The officers, however, never drew or received the amount of salary so voted, except the $2,400 a year which had heretofore been paid the president and general manager. It also appears that no charge was entered against the company or credit given any of the officers for these salaries upon the company's books until the formal resolution was adopted in 1919.

The fact that the formal resolution providing for the salaries was not adopted until 1919, and no entries were made upon the books on account of these additional salaries until that year, would not be controlling if the evidence further showed that there was some kind of an agreement, either formal or informal, between the officers of the company who held all of the stock during the year 1918, which fixed the amount of the additional salaries and provided to whom these additions should be paid. But there was no such agreement. There was merely an understanding that salaries would be raised when the proper amount was ascertained. The intention probably was that this raise should apply to the year 1918, but the amount of the increase, or to whom it should be paid, instead of being determined, was left to the determination of some other parties who did not make such determination until 1919. For this reason we think no liability arose on the part of the company to pay the increase in salaries for the year 1918.

It is well settled that directors may not create a deduction to be considered in calculating the corporation's net income for a taxable year by voting in the succeeding year to pay additional salaries for the prior year. See Bogle & Co., Inc. v. Commissioner (C. C. A.) 26 F.(2d) 771; Henderson Iron Works & Supply Co. v. Blair, 58 App. D. C. 114, 25 F.(2d) 538; Seabright Woven Felt Co. v. Ham (D. C.) 38 F.(2d) 114. In Lucas v. Ox Fibre Brush Co., 281 U. S. 115, 50 S. Ct. 273, 274, 74 L. Ed. 733, it was held that a deduction could not be made from the income of a prior year for payments of salaries made in the succeeding year when "it is undisputed that there was no prior agreement or legal obligation to pay the additional compensation." In the case at bar it would seem there was no legal obligation to pay the increase in salaries until 1919.

We do not think the cases cited by counsel for plaintiff are applicable. In Appeal of Isaacs & Co., 1 B. T. A. 45, it appeared that there was an informal agreement made by the directors with reference to the salaries in the year for which it was sought to have an allowance made, but no such agreement is shown in the case at bar. Mossman, Yarnelle & Co. v. Commissioner, 9 B. T. A. 45, seems to us directly in point. In that case it appeared that there was an informal discussion by the officers in 1918 with the evident intent of increasing the salaries for that year, but no action was taken thereon until the following year, and it was held that the increase in salaries should not be allowed as a deduction from the income of 1918. It is true that in that case the evidence did not show the amounts fixed were carried in the accounts at any time as a liability, but in the instant case they were never carried as a liability until after the recorded action in 1919. When the credit or charge was entered it was made as of 1918, but, if no liability was in fact incurred in 1918, the making of such an entry would not change the situation.

The majority opinion in the case of Brampton Woolen Co. v. Commissioner (C. C. A.) 45 F.(2d) 327, to some extent sup-

ports the contention made on behalf of the plaintiff, but we think the reasoning of the dissenting opinion is the better.

We conclude that the decision of the Commissioner was correct, and that plaintiff's petition should be dismissed. It is so ordered.

LITTLETON, Judge, took no part in the decision of this case.